**John  A.  LAMBERT,**
**Petitioner–Appellant,**

**v.**

**RAILROAD  RETIREMENT  BOARD,**
**Respondent–Appellee.**

No.  90–1413.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 14, 1990.

Decided April 11, 1991.

Gregory A. Stayart, Romanyak & Associates, Chicago, Ill., for petitioner-appellant.

Steven A. Bartholow, Edward S. Hintzke, Marguerite P. Dadabo, Railroad Retirement Bd., Chicago, Ill., for respondent-appellee.

Before CUDAHY, RIPPLE and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

John A. Lambert petitions for review of the decision of the Railroad Retirement Board (Board) in which it denied his application for a disability annuity under section 2(a)(1)(v) of the Railroad Retirement Act, 45 U.S.C. § 231a(a)(1)(v) (1988). Because the Board did not consider all the evidence in concluding that petitioner is capable of performing sedentary work, we reverse and remand.

## I.

On February 25, 1988, Lambert applied for a disability annuity under section 2(a)(1)(v) of the Railroad Retirement Act, 45 U.S.C. § 231a(a)(1)(v) (1988). He alleged that he was disabled from his regular employment because of a herniated disc in his lower back. The Board denied his initial application as well as his request for reconsideration. Lambert filed a timely administrative appeal. A hearing was held before an appeals referee. The following evidence was introduced through Lambert's testimony and various medical reports. At the time of his application, Lambert was 37–years old and had a high school diploma. He worked as a carman-welder and a car inspector for the Chicago and Northwestern Railroad from March 1973 until August 1987. His job required that he stand 6 to 7 hours a day with constant reaching, bending and lifting of materials weighing 30 to 40 pounds, but sometimes as much as 200 pounds. In January of 1987, Lambert injured his back while moving some welding equipment. Lambert testified that from the time of his injury until he left the railroad in August of 1987, he experienced a severe, aching pain in his lower back on the left side which radiated into his left hip, thigh and leg. This pain was punctuated by a frequent stabbing pain that felt like a "bolt of lightning." He also experienced paresthesia (numbness) in his entire left leg.

Lambert then sought medical treatment. On February 13, 1987, Dr. R. Scott Cairns, petitioner's treating physician, performed a CT[1] scan of Lambert's lumbar spine and reported that it was "not really very remarkable." Despite an absence of medical findings, Lambert continued to complain of pain in his lower back and left thigh and of paresthesia in his left leg. On July 31, 1987, Dr. Cairns repeated the CT scan, which showed a herniated disc at L–4, 5 on the left side of the lumbar region of his spine which had increased significantly since the February 13, 1987 CT scan. On September 1, 1987, Lambert underwent a myelogram[2] and an enhanced CT scan which revealed a small, lateral foraminal herniated disc. After a consultation with the Mayo Clinic, which diagnosed an L–4 radiculopathy from a laterally extruded disc, Dr. Cairns performed a laminotomy[3] and discectomy on Lambert on November 30, 1987.

On December 14, 1987, Dr. Cairns reported that Lambert complained of pain which differed from his pre-operative pain. Dr. Cairns noted excellent back motion and normal straight leg raising, reflexes and toe strength. On January 4, 1988, Lambert reported an increase in leg pain, and Dr.

1. "CT" is an abbreviation for computed tomography, which refers to "the gathering of anatomical information from a cross-sectional plane of the body, presented as an image generated by a computer synthesis of x-ray transmission data obtained in many different directions through the given plane." *Stedman's Medical Dictionary* 343, 1459 (5th ed. 1982).

2. A myelogram is an "X-ray visualization or photography of the spinal cord after the injection of a radiopaque substance into the spinal arachnoid space." *Stedman's Medical Dictionary* 917 (5th ed. 1982).

3. Dr. Cairns' report indicated that he had performed a laminotomy; however, elsewhere in the record the surgery is, without explanation, referred to as a laminectomy.

Cairns noted a mild paraspinal spasm and positive straight leg raising on the left leg. On February 16, 1988, Lambert reported that he did not think that the surgery had helped at all. He was still experiencing back pain and could not walk long distances. Dr. Cairns noted good back motion—although it was restricted at the extremes of motion—a diminished left leg reflex and normal straight leg raising and toe strength. On February 26, 1988, a magnetic resonance imaging (MRI)[4] test showed an abnormality at the L–4, 5, where there was some material projecting into the spinal canal. Dr. Cairns felt that this was probably post-operative scarring or possibly residual or recurrent disc material that could account for Lambert's pain. Dr. Cairns prescribed Motrin and Darvocet for Lambert's pain. At his subsequent appointments with Dr. Cairns, Lambert consistently reported pain although Dr. Cairns' medical findings showed excellent back motion, normal straight leg raising and toe strength, but a diminished left knee jerk response.[5]

Dr. Cairns also submitted a medical assessment form to the Board in which he indicated that Lambert could sit for one hour total in an eight-hour work day and could stand for one hour total in an eight-hour work day. He also indicated that Lambert should not lift more than twenty pounds and should do so very infrequently. Dr. Cairns noted that Lambert could frequently kneel and occasionally climb, crouch and crawl.

On March 19, 1988, Lambert was examined by S. Rabinowitz, M.D., an independent consultant, pursuant to the request of the Board. Dr. Rabinowitz found that Lambert had mild limitation of motion of the lower back and that a straight leg raising test was positive at ninety degrees on the left side and negative on the right. He found that Lambert's sensation, reflexes and motor strength in his lower extremities were normal as were his grip strength and digital dexterity. He also noted that Lambert was able to walk without assistance and that his gait was normal. He stated that Lambert had no difficulty getting on or off the examining table, could perform heel and toe walking and had no difficulty squatting with support. Dr. Rabinowitz noted that the results of the February 26, 1988 MRI provided a possible explanation for Lambert's back pain. Dr. Rabinowitz made the following diagnosis: (1) degenerative joint disease; (2) history of herniated nucleus pulposus, lumbar spine; (3) status post lumbar laminectomy; (4) post laminectomy pain syndrome; and (5) status post hand surgery.

Despite the surgery, Lambert testified that, except for the "lightning bolt" of pain, he still experienced the same burning, aching pain. He explained that the pain worsened over the course of the day, and that to relieve it he would shift, move about or lie down. A different pain had developed in his left thigh which felt like someone had stabbed him with a knife or a needle. This "knifing" pain occurred 10 to 20 times a day and would last from one-half minute to 10 minutes. To combat the pain, Lambert takes the drugs Darvocet and Eaansaid. Darvocet, a narcotic, makes him drowsy.

Lambert also testified to his daily activities. He spends his morning watching television. He sits on a loveseat with pillows arranged behind his back and left leg. He can sit at most an hour before he must move about or lie down. At midday, he lies in bed on an electric blanket for several hours and takes a hot bath every afternoon to ease the pain in his back. Lambert then

---

4. Magnetic resonance imaging or nuclear magnetic resonance imaging is a complex electronic procedure which produces images of the internal structures of the body. One use of magnetic resonance imaging is to examine spinal problems such as herniated discs. 2 & 3 J.E. Schmidt, *Attorney's Dictionary of Medicine* M–11, N–92 (1990).

5. Lambert later developed pain in his neck and numbness of his right arm and hand. On March 6, 1989, Dr. Cairns performed an anterior cervical discectomy and fusion on Lambert's spine at the cervical disc C–6, 7. Although evidence of this surgery was presented to the appeals referee, Lambert is not now claiming this as a basis for the disability annuity. It appears that this surgery was successful in relieving Lambert's neck and arm pain.

spends the rest of the afternoon on the loveseat, looking out the window until his wife comes home. After supper, he watches television or reads until bedtime.

In his "pain diary,"[6] Lambert indicates that he has tried to do a number of household chores, including yardwork, stripping a chair, vacuuming and doing dishes, but these aggravate his back and leg too much for him to complete these tasks. The only chore he has been able to do is dusting. Dr. Cairns recommended that Lambert walk, but his pain severely limits him. A week before the hearing, Lambert testified that it took him forty-five minutes to walk six blocks.

The appeals referee rendered his decision and found that Lambert could not return to his regular work as a carman-welder. The appeals referee also found that Lambert's testimony about the restricting nature of his pain was not credible because the medical evidence would not account for the level of pain to which Lambert testified. The referee thus applied the grid and concluded that "the appellant, a younger individual with a high school education, has the capability to perform the full range of sedentary work, and that there exists in the national economy significant numbers [of sedentary jobs] which the appellant, considering his impairments, age, education, and work experience can perform." On December 4, 1989, the Board summarily affirmed, adopting the referee's decision. Lambert filed a timely petition for review with this court which has jurisdiction to review the Board's decision pursuant to 45 U.S.C. § 231(g) (incorporating the judicial review provisions of the Railroad Unemployment Insurance Act, 45 U.S.C. § 355(f) (1988)).

## II.

### A.

██ We review the Board's decision denying disability benefits to determine whether it is supported by substantial evidence in the record. *See Peppers v. Rail-*

*road Retirement Bd.*, 728 F.2d 404, 406 (7th Cir.1984). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). We may not "decide the facts anew, reweigh the evidence, or substitute our own judgment for that of the [Board]." *See Clark v. Sullivan*, 891 F.2d 175, 177 (7th Cir.1989). In reviewing a claim for a disability annuity under the Railroad Retirement Act, the Board relies heavily on the regulations and decisions under the Social Security Act since the same analysis applies under both Acts. *See Peppers*, 728 F.2d at 406.

### B.

██ Lambert argues on appeal that the Board's decision is not supported by substantial evidence. He claims that the Board did not consider all the evidence related to his pain, and thus improperly discredited his subjective complaints of non-exertional pain. He also argues that the Board erred in relying exclusively on the grid in concluding that he retained the residual functional capacity to perform the full range of sedentary work without considering whether his non-exertional pain would limit his ability to perform such work and without obtaining testimony from a vocational expert.

The Board did not consider Lambert's testimony about his pain in determining whether he was totally disabled because it found that the objective medical evidence would not account for the level of pain to which Lambert testified. Lambert argues that the Board failed to consider some evidence and misconstrued other evidence which caused it improperly to discredit his pain testimony. Before a referee may consider a petitioner's complaints of pain, " 'there must be medical signs and findings established by medically acceptable clinical or laboratory diagnostic techniques which show the existence of a medical impair-

---

**6.** The "pain diary" is an account of petitioner's daily activities and the corresponding pain he

experiences.

ment.'" *Clark,* 891 F.2d at 177 (quoting 42 U.S.C. § 423(d)(5)(A)). The February 26, 1988 MRI provides objective medical evidence of an abnormality in Lambert's spine. Dr. Cairns and Dr. Rabinowitz both reported that the MRI could explain Lambert's pain. The Board noted the results of the MRI, but concluded that "[this] objective evidence does not support a finding that the appellant's medical condition would account for that level of pain." To justify this conclusion, the Board referred to an X-ray of Lambert's lumbar spine and stated: "However, a subsequent X-ray of the lumbar spine showed minor degenerative changes."

The Board's reliance on this X-ray to impeach the results of the MRI was inappropriate. The Board did not explain why the X-ray is a more accurate diagnostic than the MRI. When the Board discredits some piece of medical evidence, it should make explicit why such evidence is not credible. *See Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir.1989) ("The Secretary's reasons for rejecting excess symptom testimony must be clear and convincing if medical evidence establishes an objective basis for some degree of the symptoms and no evidence affirmatively suggests that the claimant was malingering."). We note that the March 19, 1988 report of the X-ray of the lumbar spine is of questionable reliability. It is not signed; consequently, we do not know who took and interpreted the X-ray of Lambert's spine. Necessarily, we know nothing of this person's qualifications. The Board has thus apparently rejected the results of the MRI and the reports of two examining physicians which state that the MRI results could explain Lambert's pain on the basis of an anonymous X-ray. The X-ray report states: "There are minimal degenerative changes present with mild anterior osteophytes throughout."[7] The Board relies heavily on this report's impression of "mild degenerative changes." There is no basis in the record, however, to assume that small, bony outgrowths and mild degenera-

tive changes in the spine are not abnormalities that could reasonably be expected to produce the pain of which Lambert complains. There is nothing in the record from anyone with medical expertise to tell us what the X-ray findings denote with respect to Lambert's pain. The material shown by the MRI as projecting into Lambert's spinal column (and the osteophytes shown by the X-ray) may be abnormalities that "could reasonably be expected to produce the [pain]" petitioner alleges. *See Sparks v. Bowen,* 807 F.2d 616, 617–18 (7th Cir.1986). No other objective medical tests were administered that contradict the evidence provided by the MRI.

Lambert also argues that, while the Board relied on Dr. Rabinowitz's observations during the examination, it ignored his diagnosis of post-laminectomy pain syndrome and his concurrence with Dr. Cairns' assessment that the February 26, 1988 MRI results could explain his pain. The Board may not selectively focus on evidence tending to disprove disability; it must also consider evidence tending to prove it. *See Garfield v. Schweiker,* 732 F.2d 605, 609 (7th Cir.1984). We know of no reason for the Board to ignore this portion of Dr. Rabinowitz's report.

Lambert adds that the Board ignored the fact that Darvocet is a narcotic prescribed to ease pain and disregarded the fact of his discomfort and his need to get up at the hearing after sitting only forty minutes. While the Board need not discuss every piece of evidence, *see Anderson v. Bowen,* 868 F.2d 921, 924 (7th Cir.1989), the evidence in question is nonetheless consistent with Lambert's claims of pain. We believe that the Board's conclusion was not based on a balanced evaluation of all the evidence. This court has required such decisions to be based upon a " 'fair and impartial presentation of all the medical evidence that is credible, supported by clinical findings, and relevant to the particular issue.' " *Bauzo v. Bowen,* 803 F.2d 917, 923 (7th Cir.1986) (quoting *Zalewski v. Heckler,* 760

7. An osteophyte is a small, abnormal bony outgrowth. *Webster's II New Riverside Univ. Dictio-* *nary* 832 (1984).

F.2d 160, 163 (7th Cir.1985)). The Board has failed to consider all the relevant medical evidence and to explain its reasons for discrediting medical evidence favorable to Lambert. The X-ray upon which the Board relied to discredit Lambert's pain testimony is not adequate to support its conclusion that the objective medical evidence did not account for the level of pain to which Lambert testified.[8]

Accordingly, we reverse and remand this cause to the Board for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

**8.** In light of our resolution of this issue, we need not reach Lambert's second argument that the Board erred in determining disability exclusively through application of the grid without introducing the testimony of a vocational expert.

We note that the testimony of a vocational expert may be necessary depending on the Board's conclusion after it reviews all the objective evidence regarding Lambert's non-exertional pain.