**Walter T. HAYES, Petitioner–Appellant,**

v.

**RAILROAD RETIREMENT BOARD, Respondent–Appellee.**

No. 91–2026.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 24, 1992.

Decided July 2, 1992.

Jennifer W. Price, James B. Wham, argued, Wham & Wham, Centralia, Ill., for Walter T. Hayes.

Steven A. Bartholow, Edward S. Hintzke, Rachel L. Simmons, argued, Railroad Retirement Bd., Chicago, Ill., for Railroad Retirement Bd.

Before BAUER, Chief Judge, CUMMINGS and EASTERBROOK, Circuit Judges.

CUMMINGS, Circuit Judge.

Petitioner Walter T. Hayes appeals the decision by the respondent Railroad Retirement Board ("Board") to deny him a permanent disability annuity pursuant to 45 U.S.C. § 231a(a)(1)(v). The issue on appeal is whether substantial evidence supports the Board's decision. Because Hayes' daily activities and the medical evidence on record do not contradict his testimony regarding his severe pain and the side effects of his medication, we reverse and remand to the Board.

## I. FACTS [1]

From 1970 until 1982, Hayes worked as a brakeman for the Illinois Central & Gulf Railroad. This job required standing or walking six to seven hours of an eight-hour day, as well as occasional lifting of up to ninety pounds. From 1984 until October 1987, Hayes worked as a tractor-trailer driver. He typically drove the truck twelve hours a day, with breaks for walking approximately every 200 miles. The truck-driving job also required frequent loading and unloading of trailer contents, which might have included lifting up to 100 pounds.

In October 1987, Hayes felt a severe pain in his lower back while cutting and loading wood. He was initially unable to straighten up, walk, or crawl. The severe pain lasted three weeks, during which time Hayes was confined to bed. On October 8, 1987, Dr. Alexander diagnosed Hayes with hypertrophic spondylosis, with a narrowed L5–S1 interspace, on the basis of an X-ray. No fracture or bone destruction was detected by the X-ray. On May 31, 1988, Hayes'

---

1. The facts are taken largely from Hayes' brief on appeal, which the Board agrees are substantially correct.

treating physician H.G. Thompson noted that Hayes had been experiencing severe lower back pain for the past six months, and diagnosed his condition as a herniated nucleus pulposus, acute sciatica, and spondylosm.

Dr. L.J. Hill, an orthopedist, examined Hayes on September 28, 1988, apparently at the request of the Board. Hayes told Dr. Hill that he suffered from lower back pain and pain down his right leg. Dr. Hill noted that all of Hayes' motions, including dressing and undressing, sitting and rising, and walking, were hesitant and apparently painful. Testing of the lumbar spine revealed limitations in the range of motion, with no extension possible. Hill found a pelvic tilt to the left, a flat lumbar curve, and an acutely tender lumbosacral joint with all motions painful. Straight-leg raising tests measured 3+ on the right and 1+ on the left at 90-degrees. Hayes' right leg gave way when attempting to stand on his toes and heels. An X-ray revealed no fracture or dislocation but showed "degenerative changes with narrowing at the L5–S1 interspace and subtle retrolisthesis at the L5–S1 interspace." Dr. Hill concluded that Hayes "has the symptoms and signs and radiographic findings of lumbar nerve root pressure at L5–S1." An October 1988 X-ray and CT scan, reviewed by Dr. H. Shyken, confirmed a finding of hypertrophic spondylosis and degenerative L5–S1 interspace narrowing, but gave no indication of skeletal injury or disc herniation.

Dr. Raymond L. Coss, also an orthopedist, examined Hayes on February 27, 1989. Hayes again reported that his back pain was constant and that it extended into his right leg all the way into the toes. Coss found that Hayes had a marked limitation of motion in all parameters. Tenderness was found over the low back in the midline in the right gluteous and episacral region, as well as in the right popliteal region. Coss found no gluteal, thigh or calf atrophy. Hayes could walk with difficulty on his toes and with ease on his heels, although there appeared to be some mild weakness of extensor hallucis longus.

In July 1989, Hayes continued to complain to Dr. Thompson about low back pain, right leg pain, and cramping, and was using a cane and a back brace. Hayes' pain was aggravated by standing or sitting. Dr. Thompson reported that Hayes walked with a limp and protected his right side when he sat down. Hayes had right paraspinatus muscular spasm, tilted pelvis, and positive straight leg raising test at 45 degrees on the right side, but not the left. At that time, Hayes' medications included Naprosyn 100 mg. b.i.d. and Tylenol with ½ gr. of Codeine, 1 or 2 every four hours as needed. These medications, Dr. Thompson indicated, would produce sleepiness and drowsiness and interfere with gainful employment.

On July 27, 1989, Hayes testified before a hearings officer with the Board's Bureau of Hearings and Appeals concerning his injuries. He testified that he had seen his family physician, Dr. Thompson, 10 times in the last 12 months. He also stated that he had been taking Naprosyn, Acetaminophen with Codeine, and Doxeprin since 1987. Both Naprosyn and the Acetaminophen/Codeine drug made Hayes very drowsy, and he took naps every morning for 1½ to 2 hours and every afternoon for 2 to 3 hours. These drugs did not completely take away his pain, which Hayes testified felt real sharp, like needles pricking. The pain worsened when sitting or walking. To relieve the pain, Hayes lay in his couch, bed, or in a recliner with his feet propped up for 3½ to 5 hours a day. Hayes testified that at most he could sit in a chair for an hour or two, or walk no more than an hour; he also testified that he would experience very sharp pain if he walked a block. He did no household chores and no bending, lifting, stooping, climbing or exercising. His daily routine was as follows: awake at 7:30 a.m.; drink coffee and visit with his wife until 9:00 or 9:30; watch television until 10:30; take a nap until around 12:00; sit outside until 1:00; sleep from about 1:00 until 3:00; watch television until about 4:00; eat supper; go back outside for between 30 minutes and an hour; and finally return inside and watch television in the evening.

Hayes testified at the hearing that he drank four or five beers every other day, and that he was sleepier on the days he drank beer than on the days in which he did not. His nap routine, however, was unaffected by the beers. Hayes also testified that he had gone fishing four or five times for a half hour at a time in the last six months, in contrast to the all-day fishing trips he took prior to his injury.

On October 30, 1989, Dr. Thompson again examined Hayes and noted that his "findings are chronic and the same as they were previously." Hayes continued on medication for pain resulting from sciatica, hypertrophic spondylosis and degenerative disc disease at L5–S1 interspace with narrowing. An independent examiner, Dr. R. Parks, examined Hayes on November 25, 1989, and agreed with Dr. Thompson's findings. Dr. Parks noted that Hayes walked "as if he had legitimate pain" and that he "obviously had pain in the right leg and limped and used a cane." Hayes could not walk on his tiptoes or on his heels. Dr. Parks diagnosed Hayes with lumbosacral spine pain secondary to muscular spasm, hypertrophic spondylosis, degenerative disc disease with a distinct possibility of herniated disc. Hayes was unable to bend at the spine to any degree, and was unable to walk 50 feet without the aid of a cane.

Dr. Thompson examined Hayes again on March 14, 1990, and noted that his sciatica was now bilateral (in both legs) and that there was atrophy of the muscles. He diagnosed Hayes with spondylosis secondary to degenerative discogenic disease of the back with bilateral sciatica. At that time, Hayes was taking the following medications: Fiorinal q 4 h p.r.n. for severe pain; Naprosyn 250 milligrams q.i.d.; and Buspar 5 milligrams q.i.d.

## II. PROCEDURAL HISTORY

On June 3, 1988, Hayes applied for a disability annuity with the Board's Bureau of Retirement Claims, which was denied on November 14, 1988. After a request for reconsideration, the Director of Retirement Claims affirmed the original denial on January 30, 1989. Hayes appealed this determination, and received a hearing on July 27, 1989, before a hearings officer of the Board's Bureau of Hearings and Appeals. Hayes and his attorney were present at the hearing. The hearings officer issued a written opinion on September 20, 1989, denying Hayes a disability annuity.

The hearings officer concluded that Hayes had shown that he would not be able to return to work as a brakeman or truck driver, but stated that Hayes would be able to engage in "light work" [2] and thus was not permanently disabled. According to the hearings officer, "the evidence on the whole does not support a finding that the appellant's medical condition would account for that level of pain [testified to by Hayes]." Hayes appealed once again. On March 30, 1990, the Board remanded the case to the hearings officer for more explicit findings on Hayes' degree of pain and on whether his drowsiness would prevent him from performing the full range of light work. On July 17, 1990, the hearings officer sent a memorandum amending his earlier decision to the Board, in which he reviewed medical evidence provided subsequent to that decision. On September 14, 1990, the Board entered an order denying the appeal and adopting the hearings officer's decision.

On May 16, 1990, Hayes was granted disability benefits pursuant to the Social Security Act. This information was before the hearings officer at the time of his July 17, 1990 internal memorandum to the Board. Neither the hearings officer nor the Board referred to the Social Security determination in their opinion.

## III. DISCUSSION

■ Our standard of review is well established. The Board's decision will be re-

---

**2.** Defined as involving

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. * * * [A] job in this category requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

versed only if it is not supported by substantial evidence or if it is based on an erroneous view of the law. *Aspros v. United States R.R. Retirement Bd.,* 904 F.2d 384, 386 (7th Cir.1990). Substantial evidence is that which a reasonable person might accept as adequate to support the result. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842. This Court "may not reweigh the evidence, and conflicts in the medical evidence are to be resolved by the referee and not the court on review." *Aspros,* 904 F.2d at 387 (citation omitted).

■ We evaluate the sufficiency of the hearings officer's opinion, since the Board adopted it and issued no further findings. The ultimate issue before the officer was whether Hayes had a "permanent physical or mental condition [such that he was] unable to engage in any regular employment." 45 U.S.C. § 231a(a)(1)(v). To make this determination, the officer followed the 5–step procedure outlined at 20 C.F.R. 404.-1520, an approach we approved in *Aspros, id.* at 386. The officer concluded in accordance with this procedure that Hayes was not currently working and had a severe impairment. This impairment, however, did not meet or equal any listed impairment in the Social Security Administration's listing of impairments. The officer found that Hayes was unable to return to his prior work as a brakeman or a truck driver, but decided, given the objective medical evidence, that Hayes was capable of performing the full range of light work. According to the hearings officer, light work requires standing for approximately 6 hours of an 8–hour workday.

The officer concluded that Hayes could perform light work based on his evaluation of the medical evidence and of Hayes' daily activities. His central findings were as follows:

> The referee does not find the restrictions testified to by the appellant credible. * * * With respect to the lumbar spine,

and right leg, x-rays and a CT scan have consistently shown no disc herniation but rather degenerative disc disease at the L5–S1 interspace. Examination has shown limitation of motion of the lumbar spine. However, the treating orthopedist found the appellant stood with ease on his heels and with difficulty on his toes. In addition, reflexes of the both legs have always been found to be normal and no muscle atrophy has been found.

The appellant testified to taking medication that after one hour makes him feel sleepy, until it is time to take the next pill and causing him to nap twice a day. Yet, in describing his everyday activities, after taking medication, he testified to visiting with his wife and watching television with no complaint of loss of concentration. He also testified to having 4 to 5 beers every other day and not feeling quite as sleepy if he does not drink.

■ Although we do not reweigh the evidence, we conclude that these findings are not supported by any substantial evidence. First, as regards his daily activities, there is simply nothing inconsistent with Hayes' testimony that the medications he took made him sleepy. Hayes never stated that he suffered no loss of concentration because of his medications, and his testimony does not support such an inference. "Visiting" with one's spouse is not reasonable evidence that one is suffering no loss of concentration. And anyone who has recently watched daytime television can attest to the modest concentration skills needed for that activity. The fact that Hayes had gone fishing 4 or 5 times in the last seven months for a *very brief* period (30 minutes each time) also does not support the officer's finding that Hayes' daily activities contradict his testimony regarding his pain and the side effects of his medications.[3]

It is undoubtedly true that the officer is entitled to weigh conflicting medical testimony in the record. However, this is a

---

**3.** The Board in its brief asserts that Hayes' "occasional driving" supports the officer's findings. Respondent's Br. at 5. The record reveals, however, that Hayes testified without elaboration that he drives "very seldom." R. at 288. The Board's description is therefore a mischaracterization of the record.

case with little conflicting medical testimony. The issue, rather, is whether the largely undisputed evidence supports the officer's findings. As the officer found, all evidence pointed to Hayes having a degenerative disc disease with narrowing at the L5–S1 interspace.[4] Drs. Alexander, Thompson, Shyken, and Parks diagnosed Hayes' condition as hypertrophic spondylosis. Dr. Hill did not make this diagnosis but mentioned degenerative changes, lumbar nerve root pressure, and degenerative facet joint disease. The officer also concluded that "[e]xamination has shown limitation of motion of the lumbar spine." Indeed, this seems an understatement. Dr. Hill found "no extension possible" of the lumbar spine. Dr. Coss found a "marked limitation" of motion in all parameters. Dr. Parks stated that Hayes was unable to bend at the spine to any degree.

The officer discounted these medical findings, and concluded that the medical evidence did not support Hayes' testimony regarding the severity of his pain, because one orthopedist found that Hayes could stand with ease on his heels, because Hayes had normal reflexes, and because no muscle atrophy had been found. Even assuming these subsidiary findings are supported by substantial evidence,[5] there is no evidence in the record explaining why Hayes' severe pain is inconsistent with these medical findings. No doctor's report in the record questioned the extent of Hayes' pain, or suggested that Hayes' medical condition was not consistent with that level of pain, or in any way suggested that Hayes was malingering.

The objective medical evidence, in the form of a CT scan, X-rays, and numerous motion testing, shows that Hayes had a serious degenerative disc disease that severely affected his back and legs. As the officer noted in his opinion, the "central issue in the appellant's case is the extent of his pain." R. at 130. Hayes' daily activities do not contradict his testimony regarding this pain. And Hayes' medical condition does not contradict his testimony, *at least in the absence of medical evidence telling us why it does*. This omission in the record is fatal. *Lambert v. Railroad Retirement Bd.*, 929 F.2d 1197, 1201 (7th Cir.1991) ("The Secretary's reasons for rejecting excess symptom testimony must be clear and convincing if medical evidence establishes an objective basis for some degree of the symptoms and no evidence affirmatively suggests that the claimant was malingering.") (quoting *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir.1989)). Therefore the only support for the officer's finding is his subjective disbelief of Hayes' testimony regarding the extent of his pain. Although we do not wish to denigrate the officer's role as a judge of credibility, his subjective disbelief of Hayes in the face of overwhelming corroborating medical evidence does not support a finding of no disability. There is certainly nothing in the record to indicate that Hayes could perform light work by standing 6 hours a day, frequently lifting 10–pound objects, and often kneeling and stooping.[6]

Hayes "need not be a complete invalid to be entitled to benefits. Rather, he need only be totally and permanently disabled." *Poole v. Railroad Retirement Bd.*, 905

---

**4.** The officer correctly noted that no X-ray or CT revealed disc herniation, but failed to discuss Dr. Thompson's opinion of May 31, 1988, that Hayes had a herniated nucleus pulposus, or Dr. Parks' opinion of November 25, 1989, that there was "a distinct possibility of herniated disc."

**5.** The normal reflexes and no muscle atrophy findings are supported by substantial evidence, although Dr. Thompson did note muscle atrophy in his March 1990 examination. While it is true that one orthopedist (Dr. Coss) found that Hayes could walk with ease on his heels, Dr.

Hill stated that Hayes' right leg gave way when standing on his heels, and Dr. Parks reported that Hayes could not walk on his heels.

**6.** The officer's memorandum dated July 17, 1990, which was prepared pursuant to the Board's remand for more detailed findings, does not cure the defects in the original opinion. The Board appears to argue in a single sentence that we could affirm the decision below on the basis that Hayes is capable of performing "sedentary work." This argument is waived because "a merely skeletal argument does not preserve an issue for review." *In re James Wilson Associates*, 965 F.2d 160, 170 (7th Cir.1992).

F.2d 654, 664 (2d Cir.1990) (citation omitted). We reverse the decision of the Board and remand the case to the Board for further consideration consistent with this opinion.[7]

---

**7.** Although not necessary for disposition of the case, for the purpose of guidance we address Hayes' further arguments that the Board erred by using the grid at 20 C.F.R. § 404, Subpart P, App. 2, without obtaining testimony from a vocational expert, and that the Board erred by failing to consider his grant of disability benefits pursuant to the Social Security Act.

The rules of the grid should be applied only when they describe a claimant's abilities and limitations accurately. *Warmoth v. Bowen,* 798 F.2d 1109, 1110 (7th Cir.1986) (citing *Heckler v. Campbell,* 461 U.S. 458, 462 n. 5, 103 S.Ct. 1952, 1955 n. 5, 76 L.Ed.2d 66). The reliance on the grid in this case was therefore inappropriate because there is no "reliable evidence of some kind that would persuade a reasonable person

that the limitations in question do not significantly diminish the employment opportunities otherwise available." *Id.* at 1112. On remand, of course, the record may be developed such that significant evidence might exist to support the use of the grid.

With regard to the Social Security issue, at the time of the Board's decision a proposed rule indicated that the Board would consider, but not be bound by, disability determinations under the Social Security Act. The Board's counsel at oral argument admitted the proposed rule was a codification of the Board's consistent practice. Since the proposed rule is now apparently in effect, we expect the Board to follow it and consider on remand the grant of disability benefits to Hayes pursuant to the Social Security Act.