Jose **OLIVARES**, Plaintiff,

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services,** Defendant.

No. 92 C 3784.

United States District Court, N.D. Illinois, E.D.

Dec. 15, 1992.

---

Deborah Susan Spector, Ellyn Hershman, Spector & Lenz, P.C., Chicago, Ill., for plaintiff.

Ann L. Wallace, U.S. Atty.'s Office, Chicago, Ill., for defendant; Paul J. Robertson, Asst. Regional Atty., U.S. Dept. of Health and Human Services, Chicago, Ill., of counsel.

## ORDER

NORGLE, District Judge.

This matter comes before the court on review of the decision of defendant Louis W. Sullivan, Secretary of Health and Human Services ("Secretary"), denying plaintiff Jose Olivares's ("Olivares") application for Social Security benefits. For the following reasons, the court reverses the decision of the Secretary and remands the case for further consideration.

## FACTS

Olivares brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Secretary's final decision denying Olivares's application for Supplemental Security Income ("SSI") under the Social Security Act, 42 U.S.C. § 1381 *et. seq.* An administrative law judge ("ALJ") denied Olivares's September 17, 1990 application for SSI by decision dated November 22, 1991. The ALJ's decision became the final decision of the Secretary when the Appeals Council of the Social Security Administration declined to review the decision on March 25, 1992. The Secretary approved Olivares's second application for SSI disability benefits on August 13, 1992. Consequently, the present claim covers the period of September 1990, the date of his first

application, to June 1992, the date of his second application.

Olivares, born in Mexico, moved to the United States and worked as a farm and factory laborer. He held his last job with the Atlantic Container Company, but ceased working for that company on November 7, 1988 due to a job-related back injury. His duties with the Atlantic Container Company included stacking corrugated boxes weighing twenty to twenty-five pounds. Olivares subsequently underwent treatment and hospitalization for his injuries. While in the hospital, he was placed in pelvic traction. Upon discharge from the hospital, Olivares's condition was diagnosed as "acute lumbosacral strain and left sciatica," Administrative Record, at 186 (hereinafter, "R. at ——"), and later diagnosis revealed "myofascial pain syndrome of lower back involving quadratus lumboratum." R. at 165. The initial prognosis was "undetermined" and later was "guarded." R. at 221.

Olivares applied for SSI and a hearing was held before an ALJ. Olivares provided the sole testimony at the hearing. All other evidence in the administrative record consists of documentation from the various doctors who treated Olivares, examined him, or were consulted. Olivares testified, and there is evidence to support him, that he could not bend without experiencing pain and could not sit, stand, or walk for long periods of time without experiencing back pain. During his treatment it was recommended that he not return to work.

The ALJ found Olivares was not disabled because he possessed the residual functional capacity to engage in medium work, 20 C.F.R. §§ 416.945, 416.967(c) (1992), and thus could perform his past relevant employment. Specifically, the ALJ found that Olivares could perform exertional functions except Olivares could not lift or carry more than fifty pounds at a time, or frequently lift or carry more than twenty-five pounds at a time; the ALJ found no non-exertional limitations. Olivares claims the ALJ's findings that Olivares can occasionally lift or carry fifty pounds, can frequently lift or carry twenty-five pounds, and can perform

his past relevant employment are not supported by substantial evidence. Olivares thus filed the present motion for summary reversal of the Secretary's decision.

## DISCUSSION

■ The Secretary's decision will be reversed only if it is not supported by substantial evidence or if it is based on an erroneous interpretation of the law. *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir.1992). Substantial evidence means relevant evidence which a reasonable person might accept as adequate to support the result. *Id.* The reviewing court is not authorized to make new factual determinations, reweigh evidence, or substitute its judgment for that of the Secretary. *Id.* The court considers the entire record, including evidence that undermines as well as supports the Secretary's findings, *Schroeter v. Sullivan*, 977 F.2d 391, 394 (7th Cir.1992), but does not resolve any conflicts in medical evidence. *Hayes v. Railroad Retirement Bd.*, 966 F.2d 298, 302 (7th Cir.1992).

■ As an initial matter, the court finds that the ALJ properly addressed the five-step inquiry outlined in the social security regulations. *See* 20 C.F.R. § 416.-920(a)–(f) (1992); *Schroeter*, 977 F.2d at 393. Nevertheless, the court finds that the ALJ's decision is not supported by substantial evidence for two reasons. First, the record shows that the ALJ did not state his reasons for rejecting contradictory medical evidence and thus appears not to have considered it. *See Schroeter*, 977 F.2d at 394–395. The ALJ did not merely resolve conflicts in medical evidence against Olivares, but actually concluded erroneously that no contradictory evidence of disability existed. Second, the ALJ erroneously made an independent evaluation of Olivares's condition based on test results and his observation of Olivares. Though credibility determinations by the ALJ are proper, where there is objective medical evidence supporting a claimant's complaint of pain, the ALJ must provide a medical reason why the claimant's testimony or disposition is incompati-

ble with his claims. *See Hayes*, 966 F.2d at 303.

■ First, despite the medical data in the record, the ALJ avouched that he found no objective findings incompatible with his assessment that Olivares retains the residual exertional functional capacity for the full range of medium work. It is true that substantial evidence does not mean the court compares the volume of evidence on which the ALJ relied to find no disability against the evidence tending to show disability, and the ALJ need not discuss every bit of evidence contained in the record. *See, e.g., Stephens v. Heckler*, 766 F.2d 284 (7th Cir.1985) (court reviews only quality of the evidence to be assured ALJ considered the important evidence). But the ALJ must, at a minimum, articulate reasons for rejecting evidence of disability. *Scivally*, 966 F.2d at 1076. The record demonstrates that there existed much reliable evidence of disability which the ALJ did not articulate a reason for rejecting; instead, the ALJ chose (without stating a reason) to favor the evidence from the one doctor adverse to Olivares's disability claim—Dr. Milgram—over other treating physicians who observed Olivares over a longer period of time than Dr. Milgram. *See Stephens*, 766 F.2d at 288 (Seventh Circuit insists that ALJ acknowledge potentially dispositive evidence).

For instance, the ALJ placed primary (and nearly exclusive) reliance on Dr. Milgram, a doctor in the hire of Olivares's employer's workmen's compensation carrier at a time when Olivares's workmen's compensation claim was pending. Dr. Milgram examined Olivares three times between February 1989 and October 1990. The ALJ accepted Dr. Milgram's report stating that Olivares could return to work contrary to Olivares's other doctors' recommendation that Olivares not work. *See* R. at 118, 122, 187–93, 195.

On the other hand, the ALJ failed to acknowledge Dr. Lara, Olivares's initial treating physician. Dr. Lara began treating Olivares in November 1988 and continued until September 1989. Dr. Lara's physical examination and x-ray findings indicated paralumbar muscle spasms "with marked limitation of lumbar sacral spine...." R. at 185. Dr. Lara further noted the existence of "some contrast material which has escaped into the subdural and epidural compar[t]ments," and an "intradural polypoid filling defect located on the left lateral periphery of the subarachnoid space." *Id.*

Another physician, Dr. Morgenstern, treated Olivares from November 1990 until January 1991. This doctor physically examined Olivares. As treatment, Dr. Morgenstern recommended a series of injections and continued physical therapy, and further recommended that Olivares not return to work; the diagnosis was "lumbosacral disc syndrome." Dr. Morgenstern's objective findings were that Olivares was unable to stand in a normal, erect posture and had fullness in the lower back and left side. R. at 121. Further, Dr. Morgenstern found that all of Olivares's spinal movements were limited and accompanied by pain and discomfort: "Full flexion is about 40 degrees with pain, extension is about 20 degrees, and both lateral flexions about 15 degrees at this time; these maneuvers are accompanied by pain...." *Id.* Straight leg raising was performed to ninety degrees but was accompanied by pain at fifty degrees. *Id.* at 121–22. These facts were not addressed.

Also in contradistinction to Dr. Milgram, Dr. Waxler, a radiologist, examined echo images of the lumbar spine and found a "herniated nucleus pulposus." R. at 124. The diagnosis of another physician, Dr. Blas, was "myofascial pain syndrome of lower back involving quadratus lumboratum," and Dr. Blas treated Olivares through a series of injections to which Olivares was not responsive. R. at 165. Further, there is an indication from a quick look at the record, that surgery was recommended for Olivares at some time. R. at 101. In all, Olivares points to the existence of evidence in the record from seven doctors (consisting of the bulk of the medical evidence in the record) which the ALJ failed to acknowledge. *See* R. at 98–101, 110–11, 113–15, 118–22, 144–83, 186–93,

195, 254, 266, 276–77. This evidence, from examinations, treatments, results, x-rays, or opinions, was contrary to Dr. Milgram's diagnosis and conclusions and should have therefore been addressed. *Cf. Micus v. Bowen,* 979 F.2d 602, 609 (7th Cir.1992) (ALJ cannot blithely reject treating physician's opinion or discount his or her opportunity to have observed claimant over long period of time).

Furthermore, in May 1991, five months prior to the hearing before ALJ, Dr. Martinez recommended that Olivares not lift more than twenty pounds. R. at 135. Dr. Martinez's diagnosis, after examination, was "lumbar intervertebral disc syndrome, lumbalgia, radicular neuralgia, [and] radiculitis." R. at 264. Dr. Martinez's examination further revealed Olivares experienced very severe sharp pains. R. at 212. Dr. Martinez's evaluations overall indicate that Olivares's ability to lift was limited and do not indicate he was feigning his pain. *See* R. at 132–37. The ALJ discredited this evidence because Dr. Martinez's reports are considered "secondary information sources," 20 C.F.R. 416.913(e)(3) (1992), due to Dr. Martinez being a chiropractor. Further, the ALJ found Dr. Milgram reliable because he was an orthopedic specialist, "periodically" saw Olivares (although he examined Olivares only three times), provided detailed reports of his physical examination findings, and provided clinical correlation with objective testing, 20 C.F.R. § 416.927 (1992). Under normal circumstances this would constitute a sufficient articulation of a basis for relying on Dr. Milgram over Dr. Martinez. In spite of this, the overwhelming weight of evidence supporting Olivares's claim buttresses Dr. Martinez's conclusions. In light of the ALJ's failure to address this other conflicting evidence, the court finds that the ALJ's reason for placing little weight on Dr. Martinez's reports does not compel a similar conclusion concerning the other evidence from treating and consulting physicians.

Second, from the record, it appears that the ALJ made an independent review of the medical evidence before him; in other words, the ALJ substituted his own medical diagnosis for those of the treating and consulting physicians when he failed to rely on or discuss Olivares's treating physicians' findings and observations. The results from tests were referred to in the ALJ's decision, *see* R. at 13, yet the ALJ failed to discuss the various doctors' prognoses or diagnoses of Olivares from these tests. From the test results, the ALJ thus concluded that "diagnostic testing has not demonstrated that [Olivares's] vertebrogenic disorder has caused [him] a radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss." *Id.* This finding is not supported by reference to medical evidence or to a conclusion of a doctor in the record.

The ALJ, in making his conclusion, thus rejected without comment the motor limitations diagnosed by several of the examining physicians. Dr. Martinez found Olivares's range of motion was limited in flexion at sixty degrees and extension at twenty degrees. A November 29, 1990 examination by Dr. Morgenstern, as described above, revealed difficulty with standing and posture and revealed limited spinal movements accompanied by pain and discomfort. Dr. Morgenstern found full flexion was about forty degrees and extension was about twenty degrees. R. at 121. And myofascial pain syndrome, found by Dr. Blas (R. at 165), involves an irritation in the back which may cause chronic pain and is not associated with any neurological or bony evidence of disease. *Stedman's Medical Dictionary* 1391 (5th Unabr. Lawyers' Ed.1982). The ALJ's independent assessment of the results from tests done at the request of doctors cannot be a substitute for the findings of doctors themselves. These examples therefore exemplify contradiction in the record.

For further support of the ALJ's findings that Olivares did not experience disabling pain, the Secretary focuses on the ALJ's reference to Olivares's testimony that he takes short daily prescribed walks and regularly drives to therapy sessions and English classes. The court finds the ALJ's reliance on this testimony specious. Although the present case does not present

quite as compelling a case as *Hayes*, the court finds that *Hayes* is informing on this point. There, the court found, contrary to the hearing officer, that Hayes's medical condition (loss of concentration) was not contradicted by his testimony that he "visited" with his spouse and watched television as part of his daily activities and that he had gone fishing. *Hayes*, 966 F.2d at 302. The court further found there was an absence of medical evidence explaining why Hayes's testimony concerning severe pain was inconsistent with the medical findings, and therefore would not accept the ALJ's conclusion that the testimony was inconsistent. *Id.* at 303. Although the only support for that conclusion was the hearing officer's subjective disbelief of the extent of pain to which the claimant testified, *id.*, and in the present case the ALJ did find some support in Dr. Milgram's report, the court in *Hayes* indicated that such a conclusion should not be justified in the face of overwhelming corroborating medical evidence, and in the absence of medical evidence to explain the contrary. *Id.; see also Lambert v. Railroad Retirement Bd.*, 929 F.2d 1197, 1201 (7th Cir. 1991) ("The Secretary's reasons for rejecting excess symptom testimony must be clear and convincing if medical evidence establishes an objective basis for some degree of the symptoms and no evidence affirmatively suggests that the claimant was malingering").

In this regard, the ALJ in the present case concluded that Olivares's testimony was inconsistent with and unsupported by the objective, clinical findings and other evidence in the record considered as a whole. As demonstrated above, there exists plenty of corroborating medical evidence. Although the ALJ stated that the record did not show Olivares experienced pain or functional limitation, R. at 16, Dr. Morgenstern opined that Olivares experienced pain, R. at 121, Dr. Waxler found that Olivares had a herniated nucleus pulposus, R. at 124, and Dr. Martinez observed that Olivares experienced very severe sharp pains, R. at 212. Further, the doctors prescribed treatment for pain relief throughout his medical care. *See also*

*Parks v. Sullivan*, 766 F.Supp. 627, 636–37 (N.D.Ill.1991) ("ALJ must give sufficient weight to the subjective as well as the objective aspects of a doctor's opinion.... Although an ALJ may ... [determine the credibility of the claimant's testimony] ... the ALJ cannot ignore the doctor's separate, professional determinations of the credibility of [the claimant's] complaints of pain that are the bases of [the doctor's] findings").

It is apparent the ALJ may not have fully considered the evidence of Olivares's possible pain and motor limitations in making the decision. Olivares may or may not suffer physiological restriction of mobility and may or may not suffer pain when moving. There is evidence to support his claim that he does. The ALJ found that Olivares could return to his old job lifting boxes weighing twenty to twenty-five pounds. On this record, the substantial evidence does not support that conclusion without a discussion from the ALJ discrediting the vast evidence supporting Olivares's request for benefits. Olivares's problems may not be more serious than the ALJ found; or the evidence may bring the ALJ to conclude that light or sedentary work is possible. But on remand, the Secretary must reevaluate whether Olivares can perform medium work and must redetermine whether Olivares is under a disability within the meaning of the Social Security Act. The court is not foreclosing the ALJ from reaching any particular conclusion on remand, however.

In summary, the sole medical evidence on which the ALJ based his decision was reports from three exams by Dr. Milgram, some chiropractic treatment, and some laboratory tests which the ALJ independently interpreted. This may be substantial evidence to support a decision that Olivares could perform medium level work if considered in the absence of other relevant and credible medical evidence to the contrary. Yet the record demonstrates a plethora of medical evidence from extensive examinations and treatment from physicians, orthopedists, and neurosurgeons, in addition to Olivares's chiropractic care, that the ALJ

evidently failed to consider, or at least provide a reason why he was discounting that evidence. Based on this record, the court cannot conclude that the Secretary's decision is based on the substantial evidence and will accordingly reverse and remand the decision of the Secretary for further findings. *See Scivally,* 966 F.2d at 1076–78.

## CONCLUSION

For reasons stated above, the court grants Olivares's motion and reverses the decision of the Secretary. The court orders the clerk to enter judgment pursuant to Fed.R.Civ.P. 58 reversing the Secretary's final decision and remanding the case to the Secretary, pursuant to the fourth sentence of 42 U.S.C. § 405(g), for appropriate additional proceedings.

IT IS SO ORDERED.