51 F.3d 276
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Milford D. ROBB, Petitioner,
v.
UNITED STATES of America RAILROAD RETIREMENT BOARD, Respondent.
 No. 94-1625.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 6, 1995.*
Decided April 7, 1995.
 
 Before BAUER, COFFEY and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 Milford D. Robb, now age 74, appeals the decision of the Railroad Retirement Board ("Board") denying him a waiver of recovery of $37,164.28 in overpaid disability payments. Robb was overpaid because he earned in excess of the amount permitted by law, and did not report these earnings to the Board. A waiver of recovery was denied because the Board found Robb to be at fault for his failure to disclose his excess earnings. We reverse in part and affirm in part.
 
 I. Background
 
 2
 In 1973, Milford Robb lost his vision and could no longer work as a railroad engineer. Disability annuities are provided for such individuals under 45 U.S.C. Sec. 231 et seq. Robb signed a form certifying that he understood the requirement for reporting any earnings he received in excess of $200 per month. In 1975, Robb decided to work part-time at a local bank in Decatur, Illinois. He planned to work 1-2 hours a day, at $2.50 an hour, doing what he described as 'courier work.' Before accepting the job however, he contacted the Board to ensure that the work would not jeopardize his monthly annuity. The Board's local representative assured Robb that the job would not affect his annuity because the wages fell below the amount permitted by the Railroad Retirement Act.
 
 
 3
 The Act provides that no disability annuity shall be paid to an individual who earns over $200 a month, and that any excess income over $200 a month must be reported to the Board. 45 U.S.C. Sec. 231a(e)(4). If the recipient's annual income is less than $2,400, then the annuities previously withheld become payable. Id. However, if the recipient's annual income exceeds $2,400, then the recipient forfeits that year's annuities in the following manner: For each $200 in excess of $2,400 earned, one month's annuity payment is forfeited. Id.
 
 
 4
 Robb began working at the bank, duly reported his income to the Board, and paid his income and social security taxes. In 1977, Robb continued working at the bank, but his annual income increased slightly. Robb testified that he contacted his local Board representative by telephone, and informed that person of his earnings. Robb further testified that the Board representative told Robb that his earnings would be below the statutory maximum, and that Robb would no longer have to report his income each year because the Board had access to his records.
 
 
 5
 Consequently, from 1977 to 1985, Robb worked part-time, paying his income and social security taxes, but not reporting his income in excess of $200 a month to the Board. Robb testified that during this time he believed the bank was reporting his income, and that he fell below the exemption, which he understood to be rising with inflation. Robb was mistaken. The statutory maximum remained at $200 a month and Robb's earnings often exceeded this figure. In 1992, Robb received a letter from the Board informing him that he had been overpaid from 1977 to 1985. The letter also stated that the Board had been aware of Robb's earnings since 1983.[1]
 
 
 6
 Between 1977 and 1985 (excluding 1978 for which there was no excess earnings), Robb earned an average of $3,825.39 a year. For these earnings, Robb forfeited 54 months of annuities, worth a total of $37,164.28. Robb does not contest the Board's calculation of the overpayment.
 
 
 7
 Robb retained counsel and requested a waiver of recovery of the overpayment. A hearing was held before a Railroad Retirement Board hearings officer. Robb testified that a Board representative had told him in 1977 that Robb's earnings would not affect his annuity and that he no longer needed to report his earnings to the Board. Robb further testified that he believed that the Bank forwarded his income to appropriate authorities. When questioned by the hearings officer, Robb could not recall whether he had received any reminder letters from the Board, which would have reminded all recipients of disability annuities that they had to report excess earnings to the Board. Robb submitted affidavits which showed that he and his wife relied on the annuity as their principal source of income, and that repayment of $37,164.28 would lead to financial ruin for them.
 
 
 8
 The hearings officer found Robb at fault for the overpayment, reasoning as follows:
 
 
 9
 If [Robb] had told the representative in the Decatur, Illinois office that he was a disability annuitant who had earned $2,602.42 he would almost certainly have been told that earnings at that level would affect his annuity. The $200 per month earnings restriction had been in effect since 1968 (Public Law 90-257) and by 1977 it is not credible that any contact representative would have [wrongly] advised a disability annuitant....
 
 
 10
 In addition, the advice that no further reports were required is also less than credible. The Board relies on the reports of its annuitants to prevent overpayments such as that at issue in this appeal. Reports of earnings from the Social Security Administration serve as a backup device to monitor payments. A contact representative would have urged further annual reports especially since the 1977 earnings were in excess of the earnings limitation.
 
 
 11
 (R. at 6). The hearings officer also found that Robb should have received reminder letters on four separate occasions beginning December 1980, despite Robb's testimony that he could not recall receiving such letters. The hearings officer concluded that Robb was at fault for not disclosing his earnings to the Board and, therefore, should not receive a waiver of overpayment.
 
 
 12
 Robb appealed to the Board, which affirmed the hearings officer's decision by a vote of two to one, reasoning that "the evidence of record provides no support for Mr. Robb's allegation that he was misinformed...." (R. at 1). The Board concluded:
 
 
 13
 Even if we were to assume for purposes of argument that Mr. Robb received incorrect information from a Board employee in 1977, the reminders sent him in 1980, 1981, 1982, and 1984 should certainly have put him on notice as to the need to report his earnings.
 
 
 14
 (R. at 2). Robb now appeals to this court. The issue is whether substantial evidence supports the Board's finding that Robb was at fault in the overpayment.
 
 II. Analysis
 A. Applicable Law
 
 15
 The Railroad Retirement Act authorizes the Board to recover overpaid benefits at any time. 45 U.S.C. Sec. 231i(a). However, section 10(c) of the Act provides for a waiver of recovery in certain circumstances:
 
 
 16
 There shall be no recovery in any case in which more than the correct amount of annuities or other benefits has been paid under this subchapter to an individual or payment has been made to an individual not entitled thereto who, in the judgment of the Board, is without fault when, in the judgment of the Board, recovery would be contrary to the purpose of this subchapter and the Railroad Unemployment Insurance Act or would be against equity or good conscience.
 
 
 17
 45 U.S.C. Sec. 231i(c). "Thus, there is a two-part test for waiver of over-payment: (1) the beneficiary must be without fault, and (2) recovery must either be (a) against the purpose of the Act or (b) against equity or good conscience." Peterson v. United States R.R. Retirement Bd., 780 F.2d 1361, 1363 (8th Cir.1985).
 
 
 18
 "A recipient is 'at fault' if the overpayment was caused by the recipient's failure to disclose material facts or if the recipient knew or should have known the payment was incorrect but failed to report it." King v. Railroad Retirement Bd., 981 F.2d 365, 367 (8th Cir.1992) (citing 20 C.F.R. Sec. 255.12(a)-(c)).
 
 
 19
 "Recovery is against the purpose of the Act if it deprives the beneficiary of the necessities of life." Id. (citing 20 C.F.R. Sec. 255.12(d)). "Recovery is 'against equity or good conscience' where the beneficiary has changed his or her position in reliance on the overpayments to such an extent that recovery would impose a severe hardship." Id. (citing 20 C.F.R. Sec. 255.12(e)).
 
 
 20
 "We will reverse the decision of the Board only where it is not supported by substantial evidence or does not have a reasonable basis in the law." Aspros v. United States R.R. Retirement Bd., 904 F.2d 384, 386 (7th Cir.1990) (citations omitted). "Substantial evidence is that which a reasonable person might accept as adequate to support the result." Hayes v. R.R. Retirement Bd., 966 F.2d 298, 302 (7th Cir.1992) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). "Determinations of credibility are for the hearing officer." Peppers v. R.R. Retirement Bd., 728 F.2d 404, 406 (7th Cir.1983) (citing Bibbs v. Secretary of Health, Educ. and Welfare, 626 F.2d 526, 528 (7th Cir.1980)) (deferring to hearings officer's determination of credibility when evaluating conflicting medical testimony).
 
 
 21
 B. Is the Board's Decision Supported by Substantial Evidence?
 
 1. Overpayments from 1977 to December 1980
 
 22
 Substantial evidence does not support the finding that Robb was at fault from 1977 through December 1980. Robb testified that he discontinued reporting his income to the Board on the advice of a Board representative in 1977. The hearings officer declared that "it is not credible that any contact representative would have advised a disability annuitant" in such a manner. (R. at 6). We are aware that the hearings officer "must be free to disregard self-serving statements that cannot be verified, and the ALJ's assessment of credibility must be given great weight." Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir.1990) (quoting Hudson v. Bowen, 849 F.2d 433, 434 (9th Cir.1988)) (holding that substantial evidence supported an adverse credibility finding by the ALJ).[2]
 
 
 23
 Unlike the situation in Anderson however, there is no evidence to support the hearings officer's finding in Robb's case. Other than speculation as to what a local Board representative would have said in 1977, Robb's testimony is uncontested and all other evidence supports Robb's testimony that he was misinformed in 1977. Robb contacted the Board, and reported his income in 1975 and 1976. Only after his claimed contact in 1977 did Robb fail to report. Robb has made no attempt to hide his meager income; he made all social security and income tax payments that were due. Additionally, Robb cooperated fully with the Board once he was contacted regarding the overpayment. There is no indication in the record that Robb has made any attempt to evade the Board, and he has shown no sophistication that would indicate such an effort. See Anderson, 914 F.2d at 1123-24 (describing beneficiary's evasiveness in testimony and cognition of the Social Security Act's requirements). In short, the hearings officer's finding that Robb was "not credible" simply because the hearings officer could not conceive of such misinformation being dispensed by a Board representative is not supported by substantial evidence, and is contradicted by every other action that Robb has taken in this matter. See Cooper v. United States R.R. Ret. Bd., 977 F.2d 647 (D.C.Cir.1992) (reversing Board's decision that found overpaid beneficiary was at fault; because the beneficiary, proceeding in good-faith, either misunderstood or was misinformed by the Board's instructions).[3] Accordingly, we hold that the Board's finding of fault, with respect to the overpayments beginning in 1977 and ending in December 1980, is not supported by substantial evidence.
 
 2. Overpayments from December 1980 to 1985
 
 24
 Substantial evidence does support the Board's finding that Robb should have known to report his income from December 1980 to 1985. In December 1980, letters were sent to all disability beneficiaries, reminding them of their obligation to report excess income. Robb testified that he could not recall receiving such letters. However, the Board found the Robb should have received four reminder letters during the period between December 1980 and February 1984. Also, there was no evidence that the letters were returned as undeliverable, and Robb acknowledged receiving other correspondence from the Board. (R. at 162).
 
 
 25
 Because receipt of the reminder letters should have put Robb on notice to report his income to the Board, or at least make some further inquiry, there is substantial evidence to support a finding that Robb was at fault from December 1980 to 1985. But cf. Cooper, 977 F.2d at 651 ("In view of his belief that he was no longer a disability annuitant, Cooper cannot be faulted for believing that the notices did not apply to him.").
 
 III. Conclusion
 
 26
 Substantial evidence does not support the Board's finding that Robb was at fault for the overpayment of his disability annuity from 1977 to December 1980. Accordingly, the case is remanded for the Board to determine whether recovery of these overpayments would cause Robb a severe hardship. If the Board finds that severe hardship would result, then, pursuant to 45 U.S.C. Sec. 231i(c), Robb should receive a waiver of recovery for overpayments through December 1980. In December 1980, letters were sent to all disability recipients which reminded them of their reporting obligation. These letters are substantial evidence which supports the Board's finding that Robb should have known to report his income from that point onwards. Accordingly, the Board's denial of a waiver of recovery with regard to these payments is affirmed.
 
 
 27
 The decision of the Board is REVERSED in part, and AFFIRMED in part.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 Robb has made no argument that the Board wrongfully let the overpayments accrue since 1983, when it became aware of Robb's earnings, and we do not address this issue
 
 
 [2]
 Although Anderson concerned the overpayment of social security benefits, the test for waiver of recovery of such benefits is identical to that established under the Railroad Retirement Act. Peterson, 780 F.2d at 1363
 
 
 [3]
 Cooper noted that the beneficiary's misunderstanding of his earning limitation was not uncommon (the Cooper beneficiary mistakenly thought that once he reached a certain age his disability annuity automatically converted into a retirement annuity, which has no earnings limitation). The court continued: "The Railroad Retirement Act is itself highly complex, capable of being misunderstood even by those considered experts in the field, so complex in fact that witnesses appearing before congressional committees considering this legislation frequently misstated its provisions." Cooper, 977 F.2d at 650. See also United States R.R. Ret. Bd. v. Fritz, 449 U.S. 166, 192-93 (1980) (Brennan, J., dissenting) (quoting misinformation and misunderstanding at congressional hearings on Railroad Retirement Act)