**Curtis R. PETERSON, Petitioner,**

v.

**UNITED STATES RAILROAD RETIREMENT BOARD,**
**Respondent.**

**No. 85–5062.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1985.

Decided Dec. 30, 1985.

See also 8 Cir., 785 F.2d 245.

Laurie N. Davison, Minneapolis, Minn., for petitioner.

Marguerite P. Dadabo, Chicago, Ill., for respondent.

Before ROSS, McMILLIAN and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

Curtis R. Peterson appeals from a final decision of the United States Railroad Retirement Board denying him a waiver of recovery of overpayment under 45 U.S.C. § 231i(c). We affirm in part and reverse in part.

Mr. Peterson, age 65, receives disability benefits under the Railroad Retirement Act of 1974, 45 U.S.C. § 231 *et seq.* Between 1979 and 1982, Mr. Peterson's benefits were overpaid by a total of $4,770.70. These overpayments stemmed from two sources: Mr. Peterson was overpaid $3,974.50 (the first overpayment) because his wife had earnings in excess of the amount permitted by law. He was overpaid an additional $796.20 (the second overpayment) as a result of his and his son's receipt of Social Security benefits. The Board has recouped $916.31 through withholding accrued benefits due Mr. Peterson on his and his son's behalf, leaving $3,854.39 unrecovered.

■ The Railroad Retirement Act authorizes the Board to recover overpaid benefits. 45 U.S.C. § 231i(a). However, the Act further provides that "[t]here shall be no recovery" of overpayments made "to an individual ... who, in the judgment of the Board, is without fault when, in the judgment of the Board, recovery would be contrary to the purpose of this subchapter ... or would be against equity or good conscience." 45 U.S.C. § 231i(c). Thus, there is a two-part test for waiver of overpayment: (1) the beneficiary must be without fault, and (2) recovery must either be (a) against the purpose of the Act or (b) against equity or good conscience. This test is identical to that established for recovery of overpayment in the Social Security program. 42 U.S.C. § 404(b).

An individual who receives an overpayment is "at fault" for this purpose if the overpayment was caused by the recipient's incorrect statement or failure to disclose material facts, or if the recipient knew when he or she received the payment that the amount was incorrect but failed to advise the Board. 20 C.F.R. § 255.12(a)–(c). The Railroad Retirement Act, like the Social Security Act, provides workers and their families with protection against hardships created by the loss of earnings due to illness or old age. See *Mathews v. DeCastro*, 429 U.S. 181, 185–86, 97 S.Ct. 431, 434–35, 50 L.Ed.2d 389 (1976). Recovery is against the purpose of the Act if it deprives the beneficiary of the necessities of life. 20 C.F.R. § 255.12(d). Recovery is "against equity or good conscience" where the beneficiary has changed his or her position in reliance on the overpayments to such an extent that recovery would impose a severe hardship. 20 C.F.R. § 255.12(e).

In the instant case, Mr. Peterson, upon receiving a notice of overpayment from the Board, promptly requested a waiver. The Board's Bureau of Retirement Claims denied his request, and Mr. Peterson appealed. He was then given a hearing before an appeals referee. Mr. Peterson and his wife testified that he had told the Board about both his wife's employment and his and his son's Social Security benefits; Mr. Peter-

son also submitted affidavits from Board employees substantiating his claim that he told the Board about his wife's earnings. The Appeals Referee found the testimony of Mr. Peterson and his wife concerning their Board contacts not credible, noting that there was no record of these contacts in the Board's file. The Referee found that Mr. Peterson failed to report his wife's income and the Social Security benefits. While she acknowledged that recovery would cause Mr. Peterson hardship, the Referee concluded that because he was at fault in causing both overpayments, waiver was precluded under 45 U.S.C. § 231i(c).

Mr. Peterson appealed the Referee's decision to the Railroad Retirement Board. The Board overturned the Referee's finding that Mr. Peterson was at fault in causing the first overpayment, accepting the affidavits of Board employees stating that Mr. Peterson had told them about his wife's earnings. However, the Board found that recovery of the first overpayment was not against equity or good conscience or the purpose of the Act, since the Petersons were both employed and owned a home valued at $26,000. The Board affirmed the Referee's finding that Mr. Peterson was at fault in causing the second overpayment, and denied a waiver of recovery for both overpayments.

■ On this appeal, Mr. Peterson contests the Board's conclusions on both overpayments. Our function in reviewing these decisions is limited to determining whether each of them "is supported by substantial evidence, is not arbitrary, and has a reason-

able basis in law." *Williams v. United States Railroad Retirement Board,* 585 F.2d 341, 343 (8th Cir.1978) (citations omitted). While we are not free when reviewing an agency decision under this standard simply to substitute our decision for that of the agency, we must set aside the decision if we "cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of the evidence opposed to the [agency's] view." *Universal Camera Corp. v. National Labor Relations Board,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951).

■ Employing this standard of review, we conclude that the Board's determination that recovery of the first overpayment is consistent with the purposes of the Act is not supported by substantial evidence. The Board seeks to recover the $3,974.50 overpayment at the rate of eighty-one dollars a month for four years. However, the financial statement dated August 6, 1984, that Mr. Peterson submitted with his appeal to the Board shows that his family's total income, including both benefits and his and his wife's earnings, exceeds the family's expenditures on necessities by only sixteen dollars a month.[1] While the Board decision cites Mr. Peterson's unencumbered ownership of a home valued at $26,000 as a justification for recovery, we note that a $26,000 home is "not what it used to be." *Hansen v. Harris,* 507 F.Supp. 900, 903 (W.D.Ark.1981).[2] We

---

1. In its brief, the Board for the first time assails the credibility of this financial statement and contends that the first of two earlier financial statements filed by Mr. Peterson during the course of these proceedings more accurately reflects Mr. Peterson's financial status. This earlier statement, dated December 7, 1981, showed that Mr. Peterson's income exceeded his expenses by one hundred and fifty dollars a month. Mr. Peterson's second financial statement, filed thirteen months later on January 11, 1983, showed that his expenses exceeded his income by fifteen dollars a month. Neither the Board decision on Mr. Peterson's appeal nor that of the Appeals Referee questioned the veracity of any of Mr. Peterson's financial statements. It would be improper for us to rely

upon a financial statement filed almost four years ago rather than a more recent statement not questioned by the Board in its decision.

2. In *Hansen,* a case very similar to that presently before us, the Court found recoupment of $1,750 in overpaid benefits inconsistent with the purposes of the Social Security Act where the beneficiary owned a $10,000 home, had $1,500 in savings, and had income which marginally exceeded her expenses. The Court found that the beneficiary needed substantially all her financial wherewithal to supply her family with the necessities of life and decried as "Draconian" the Secretary of Health and Human Services' attempt to recover every dollar not spent on absolute neccessities. 507 F.Supp. at 902–03.

cannot accept that Mr. Peterson should be required to mortgage or sell his house (which could at most be described as "modest") to repay an overpayment which was not his fault. Indeed, even if Mr. Peterson could obtain a loan, he has no income with which to repay it. Our examination of the record as a whole leads us to the conclusion that recoupment here would deprive Mr. Peterson and his family of necessities, and that the Board's decision that recovery would be consistent with the purpose of the Act is not supported by substantial evidence. The law does not require that beneficiaries who are without fault be cut quite so close to the bone.

■ With regard to the second overpayment, we hold that the Board's determination that Mr. Peterson was at fault is supported by substantial evidence in the record and must be affirmed. As noted above, there was no confirmation in the Board's file that Mr. Peterson told the Board representatives about either his wife's earnings, which caused the first overpayment, or his and his son's Social Security benefits, which caused the second overpayment. Although Mr. Peterson presented affidavits from Board employees confirming his contacts with them concerning his wife's earnings, he presented no similar documents substantiating his claimed contacts concerning the Social Security benefits. Further, it is not apparent from Mr. Peterson's testimony before the Appeals Referee that he even claimed to have contacted Board employees after he began receiving Social Security benefits; the only contacts he clearly claimed to have made concerned only the possibility and advantages of filing for Social Security benefits. Thus, there was substantial evidence from which the Board could have concluded that Mr. Peterson failed to notify

the Board that he was in fact receiving Social Security benefits.[3]

In sum, we hold that the Board is entitled to recovery of the second overpayment but not of the first overpayment. The Board must disburse to Mr. Peterson the $120.11 in excess of the second overpayment that it has already recovered and cease further recoupment efforts on the first overpayment.

Affirmed in part, reversed in part with directions.

---

**3.** Mr. Peterson contends that he was not given an adequate opportunity to present his side of the issue on the second overpayment. However, our examination of the record indicates that the Board fairly notified Mr. Peterson that the overpayment caused by the Social Security benefits was at issue and that he was given ample opportunity to testify about these overpayments before the Appeals Referee. While the Referee indicated at several points that she was not greatly interested in the Social Security portion of the case (Tr. 112, 113), she did not obstruct Mr. Peterson's testimony on the issue; in fact, Mr. Peterson's most extensive testimony about his contacts with the Board concerning Social Security benefits was presented after the Referee indicated her disinterest (Tr. 114).