**Denver S. COOPER, Petitioner,**

v.

**UNITED STATES RAILROAD RETIREMENT BOARD, Respondent.**

No. 92–1080.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 25, 1992.

Decided Oct. 23, 1992.

Edwin H. Daniels, Sr., argued the cause and filed briefs for petitioner.

Edward S. Hintzke, Asst. Gen. Counsel, argued the cause for the U.S. Railroad Retirement Bd. With him on the brief were Catherine C. Cook, Gen. Counsel, Steven A. Bartholow, Deputy Gen. Counsel, and Rachel L. Simmons, Atty.

Before: RUTH BADER GINSBURG, BUCKLEY, and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

This is a petition for review of the decision of the Railroad Retirement Board refusing to waive the recovery of some $40,000 from Denver S. Cooper as reimbursement for occupational disability annuity payments made to him between 1980 and 1984 pursuant to the Railroad Retirement Act and the regulations thereunder.

Cooper began receiving payments in 1977, when his chronic back problems caused him to end his 36–year career in the railroad industry. Cooper then knew that if he earned more than $200 in a month, his disability annuity for that month would be forfeited, to be returned only if his total excess earnings for the year were less than $2500. 45 U.S.C. § 231a(e)(4).[1] When Cooper applied for his disability annuity he read a pamphlet, G–176, explaining this limitation. Cooper certified that he understood the restriction. Until the end of 1979, Cooper's earnings from part-time work as a school bus driver did not exceed the yearly limit.

In 1980, when he turned 60, Cooper went to the Railroad Retirement Board office in Oakland, California, to inquire about converting to an age and service annuity. The Railroad Retirement Act authorizes age and service annuities for "individuals who have attained the age of sixty and have completed thirty years of service." 45 U.S.C. § 231a(a)(1)(ii). This form of annuity would not have entitled Cooper to any greater monthly payment; but it was not accompanied by any limitation on outside earnings. 45 U.S.C. § 231a(e)(4). Although there is some uncertainty about what transpired at the Board's office, Cooper left with the impression that he had converted his annuity during his visit. Decision of Hearings Officer, Decision No. 3778 (1988).

---

1. This was increased to $400 a month in 1988. Pub.L. No. 100–647, § 7303(a), 102 Stat. 3342,

90–892, at 3 (Feb. 28, 1990) [hereinafter Hearings Officer]. Believing himself no longer subject to an earnings limitation, Cooper began earning more than $200 a month. During the next five years, from 1980 until the end of 1984, Cooper earned an average of $5400 per year from his job as a school bus driver and other employment.

According to the Board, there were no records indicating that Cooper had switched from a disability annuity to an age and service annuity. As a result, Cooper remained subject to the earnings limitation until he reached age 65 in the spring of 1985 when, pursuant to the Act, his disability annuity automatically turned into a retirement annuity having no such limitation. 45 U.S.C. § 231d(c)(2); 20 C.F.R. § 218.36. The Board also tells us that as a matter of law Cooper could not have "converted" his disability annuity into an age and service annuity. The reason apparently is that the Act contains no explicit authorization permitting this. If the Board's view is correct, and Cooper does not dispute it here, it would have been legally impermissible for Cooper to convert his disability annuity to an age and service annuity when he turned 60.[2] Between January 1, 1980, and December 31, 1984, Cooper therefore received $40,661.24 in disability annuity payments that he should not have retained in view of his outside earnings.

The Board began proceedings to recover the overpayments in 1988. Cooper asked the Board to waive recovery. A provision of the Act, 45 U.S.C. § 231i(c), permits the Board to forego recovery of erroneous payments to any individual "who, in the judgment of the Board, is without fault when, in the judgment of the Board, recovery would be contrary to the purpose of [the Act] ... or would be against equity or good conscience." In its regulations, the Board construes this provision to mean that a waiver could apply to all or part of the overpayments and that in any case the individual must first satisfy the Board that he was "without fault." 20 C.F.R. § 255.-

10. The additional requirement, which does not concern us here, relates to the "hardship" on the faultless individual if the payments are recovered by a specific method. *Burns v. United States R.R. Retirement Bd.*, 701 F.2d 193, 202–03 (D.C.Cir. 1983); *Peterson v. United States R.R. Retirement Bd.*, 780 F.2d 1361, 1363 (8th Cir.1985). A Board regulation sets forth several factors for determining whether a waiver is appropriate. 20 C.F.R. § 255.12. Among these is "[w]hether, at the time or times of receipt of payments the individual knew or should have known the amount thereof to be incorrect and failed to inquire or advise the Board of the incorrectness of the amount of the payment or payments." 25 C.F.R. § 255.12(c).

In 1989, the Director of Retirement Claims denied Cooper's request for a waiver and found, incorrectly it later turned out, that Cooper owed $54,457.04. Letter from Robert S. Kaufman, Director of Retirement Claims, to Denver S. Cooper (May 26, 1989). The Director explained that Cooper was at fault for failing to report his earnings as required under a disability annuity. The Director reasoned that Cooper's receipt of literature about retirement annuities and annual reporting notices adequately informed him of the need to report his earnings.

After an evidentiary hearing before the Board's Bureau of Hearings and Appeals, a hearings officer sustained the denial of Cooper's waiver request. The decision stated that "[t]he hearings officer does not question or doubt [Cooper's] sincerity or integrity. His testimony and written arguments are wholly credible." Hearings Officer at 4. The hearings officer nevertheless found that Cooper "was not without fault in causing the overpayment" because Cooper's significant union experience and education placed him in a position "to understand the conditions of his annuity entitlement." *Id.* Although the officer did find that "[g]iven the enormity of the amount of the overpayment and the employee's advanced age ... any attempt at recovery

**2.** The Board states that Cooper's only option was to cancel his disability annuity, repay the $23,429.66 he had previously received, and then apply for an age and service annuity.

would impose a most severe hardship," he believed himself obligated to deny a waiver under the Act because Cooper was "not without fault." *Id.*

On Cooper's appeal to the three-member Railroad Retirement Board, the Board voted 2–1 to affirm the decision of the hearings officer, adopting his reasoning on the waiver issue. *Appeal of Denver S. Cooper*, No. 3814 (Oct. 15, 1991).[3]

In reviewing the Board's decision, we take as given that Cooper knew his disability annuity carried with it a limitation on outside earnings, a limitation he did not exceed until he turned 60. It is also certain that Cooper's excess earnings stemmed from his mistaken belief that he was no longer receiving a disability annuity. The hearings officer, in a finding adopted by the Board, so found. There is also no question that Cooper did not have actual knowledge of the alleged statutory restriction on converting his disability annuity. On this subject, the hearings officer found Cooper's denial of knowledge "wholly credible." Before the Board the case therefore turned on whether Cooper should have known that he could not convert his disability annuity to an age and service annuity. In this petition for review, the question for us is whether substantial evidence on the record considered as a whole supports the Board's decision that Cooper should have known. *Andrews v. United States R.R. Retirement Bd.*, 595 F.2d 676, 681 (D.C.Cir.1978).

The decision of the hearings officer, which the Board adopted, relied on Cooper's union experience and his education. Cooper had a high school diploma and took about 47 units of college training classes during an 8–year period. He was a "grand lodge organizer, a union field representative and an International representative." The officer thought Cooper was therefore "in position to be acutely aware of the conditions of annuity eligibility and entitlement." Hearings Officer at 4. Why this follows is not apparent. The Railroad Retirement Act is itself highly complex, capable of being misunderstood even by those considered experts in the field, so complex in fact that witnesses appearing before congressional committees considering this legislation frequently misstated its provisions. See Justice Brennan's dissenting opinion in *United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 192–93, 101 S.Ct. 453, 468, 66 L.Ed.2d 368 (1980), for examples. Nothing in the record indicates that Cooper's union experience provided him with an opportunity to become familiar with the intricacies of the Act or the regulations. On this matter we find only a letter to the Board from Richard I. Kilroy, the International President of Cooper's union, explaining: "No [union] officers are expected to be familiar with the full range of the Board's rules and restrictions. This organization relies totally on the Board's representatives for authoritative advice on particular benefits." Letter from Richard I. Kilroy, International President, Transportation Communications International Union, to Ms. Bea Ezerski, Secretary to the Board 2 (Mar. 14, 1990).

The hearings officer, and the Board in its arguments before this court, stress pamphlet G–176, which Cooper certified he had read prior to receiving his disability annuity. The pamphlet explains clearly the $200 limitation on outside earnings. But that was not the source of Cooper's confusion. His misunderstanding, we repeat, concerned the Board's prohibition on converting his disability annuity. That subject was not addressed in the pamphlet. In a few places, the booklet states that the limitation on outside earnings is applicable un-

---

3. The Board detected an error in the hearings officer's calculation of the amount of overpayments and reduced Cooper's liability to $40,-661.24. Thereafter, Cooper wrote a letter to the Board requesting the right to pay back the money by means of an actuarial adjustment, one of the Board's options for recovery. 45 U.S.C. § 231i(a); 20 C.F.R. § 255.8. Cooper contended that under insurance actuarial tables his life expectancy was an additional 12 years and so the Board should withhold $282.37 a month from his annuity payments. Without responding directly to Cooper's letter, the Board sent him two letters in January 1991 providing repayment options. Those letters offered an actuarial adjustment of $593.65 a month, without explaining how the figure was reached.

til the age of 65, but the pamphlet does not mention whether individuals are permitted to switch to annuities that do not contain such limitations. Cooper believed that as an employee eligible for an age and service annuity he could convert his disability annuity and thereby relieve himself of the limitation discussed in the pamphlet. Given the literature's ambiguity, his mistake was understandable and apparently not unusual. The dissenting member of the Board, C.J. Chamberlain, noted: "Past experience has shown that often an employee with 30 years of service will think he or she can 'switch' to regular retirement at age 60 or 62. This is not an uncommon belief." Chamberlain Letter at 2. Furthermore, the Board's interpretation—that a disability annuity cannot be converted to an age and service annuity and that the only way to change is by dropping the disability annuity, paying back everything received under it and starting afresh with the other annuity—does not exactly leap out of the United States Code or the Code of Federal Regulations. The Act says nothing explicit on the matter and neither do the Board's regulations. What does appear in the statute could lead even the careful reader to believe that a switch could be done. *See* 45 U.S.C. § 231a(1), describing individuals entitled to annuities to include "individuals who have attained the age of sixty and have completed thirty years of service," but containing no proviso disqualifying those fitting this description but receiving disability annuities. The Board's further view that anyone dropping a disability annuity to pick up an age and service annuity must repay disability payments rests on 20 C.F.R. §§ 217.25–.27. Yet on their face these regulations deal with canceling "applications" such as the one Cooper must have filed in 1977. We do not here question the Board's reading of its own regulations to cover Cooper's situation, although it is hard to discern a rationale for requiring someone like Cooper to return payments received during a time when all agree he was disabled. The important point is that we find no substantial evidence to indicate that Cooper's education and union experience should have led him to the Board's view.

The Board's final point, one mentioned by the Director of Retirement Claims but not the hearings officer, is that two notices sent to Cooper reminding him of his obligation to report outside earnings under a disability annuity should have alerted him to the fact that his annuity was still in that status. We cannot see how this supports the Board's "should have known" determination. Cooper apparently did not ignore these notices. The hearings officer, finding Cooper "wholly credible," mentioned his testimony that he wrote brief messages on the notices "to the effect that the limitation did not apply to him and he mailed the notices back to the Board." Hearings Officer at 3. The notices were printed form letters sent to thousands of individuals. The heading declared: "AN IMPORTANT REMINDER FOR DISABILITY ANNUITANTS." In view of his belief that he was no longer a disability annuitant, Cooper cannot be faulted for believing that the notices did not apply to him. *See Burns v. United States R.R. Retirement Board*, 701 F.2d at 201.

The Board's conclusion that Cooper should have known that he could not convert his annuity is not supported by substantial evidence. The Board's refusal to grant Cooper a waiver because he was "not without fault" therefore cannot stand. Cooper still must satisfy the hardship component of 45 U.S.C. § 231i(c). Although the hearings officer found that "any attempt at recovery would impose a most severe hardship," Hearings Officer at 4, the Board did not address the matter. We therefore remand to the Board for a determination of this issue.[4]

*Petition for review granted.*

---

4. Cooper also seeks to contest the Board's method of recovery, contending that the actuarial

adjustment offered in the January 1992 letters is too large. *See supra* note 3. The Board's Brief states, without elaboration, that the two letters "are not part of that formal decision and are not subject to review in this proceeding," Respondent's Brief at i-ii. At oral argument the Board's counsel explained that Cooper was obligated to seek an administrative hearing before turning to the court, but conceded that Cooper could appeal an adverse decision concerning the size of any actuarial adjustment if he first exhausted administrative procedures. Given our disposition of Cooper's challenge to the Board's waiver decision, it is unnecessary for us to decide whether the Board's actuarial tables are more accurate than Cooper's calculations.