Denver S. COOPER, Petitioner,

v.

**UNITED STATES RAILROAD
RETIREMENT BOARD,**
Respondent.

No. 93–1442.

United States Court of Appeals,
District of Columbia Circuit.

June 3, 1994.

Edwin H. Daniels, Sr., New Bern, NC, was on the application, for petitioner.

Steven A. Bartholow, Chicago, IL, Catherine C. Cook, Kensington, MD, and Marguerite P. Dadabo, Chicago, IL, were on the application, for respondent.

Before: EDWARDS and SILBERMAN, Circuit Judges, and OAKES,* Senior Circuit Judge, United States Court of Appeals for the Second Circuit.

Opinion for the Court filed PER CURIAM.

Separate statement filed by Circuit Judge SILBERMAN, dissenting from the award of attorney's fees and costs.

### ORDER

Upon consideration of the application for award of attorney's fees and the amendments thereto, the responses thereto and the re-

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

plies; and the bill of costs, the response thereto and the reply, it is

**ORDERED,** for the reasons stated in the accompanying memorandum, that petitioner be granted an award of attorney's fees and expenses in the amount of $57,973.27.

## PER CURIAM:

Denver Cooper seeks an award of attorney's fees and expenses in connection with his challenge to the Railroad Retirement Board's ("Board") refusal to waive the recovery of $40,661.24 in disability annuity overpayments made to him between 1980 and 1984.

Although Cooper views his fee petition as a single request, it is actually four requests addressing separate parts of his litigation against the Board: 1) *Cooper v. Railroad Retirement Board,* 977 F.2d 647 (D.C.Cir. 1992) (*"Cooper I"*); 2) *In re Cooper,* No. 93–1102, 1993 WL 71714 (D.C.Cir. Mar. 3, 1993) (petition for mandamus); 3) proceedings on remand to the Board; and 4) *Cooper v. Railroad Retirement Board,* No. 93–1442, 1993 WL 515541 (D.C.Cir. Dec. 6, 1993) (*"Cooper II"*).

### 1. Cooper I

Cooper requests compensation for 539.05 hours of attorney time at the rate of $113.85 per hour. The Board opposes awarding any attorney's fees for *Cooper I,* arguing that Cooper did not "prevail," and that the Board's position was "substantially justified." Alternatively, the Board argues that any fees awarded should not exceed $75 per hour, and that the number of hours should be reduced.

■ Under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (1988), a court shall award attorney's fees to a "prevailing party" unless the court concludes that the position of the United States was "substantially justified." A party "prevails" when the outcome of his lawsuit "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby,* —— U.S. ——, ——, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992).

■ The Board argues that Cooper did not "prevail" in *Cooper I,* since the court only decided that he was "without fault" in obtaining the overpayment, but did not determine that he was entitled to a waiver of the overpayment. The Board's position is meritless. The Supreme Court has held that a party who obtains a remand, and then ultimately succeeds on the merits of his underlying claim, is entitled to an award for attorney's fees incurred in obtaining the remand. *See Sullivan v. Hudson,* 490 U.S. 877, 886, 109 S.Ct. 2248, 2254–56, 104 L.Ed.2d 941 (1989) ("[W]here a court's remand to the agency for further administrative proceedings does not necessarily dictate the receipt of benefits, the claimant will not normally attain 'prevailing party' status ... until after the result of the administrative proceedings is known").

The Board acknowledges that Cooper prevailed in *Cooper II,* where the court reversed the Board's determination that repayment would not cause Cooper "hardship." Both "fault" and "hardship" were at issue in this case, and it is now clear that Cooper prevailed on both issues.

■ Nor was the Board's position in *Cooper I* substantially justified. The Supreme Court has interpreted that standard to mean that agency action is justified "to a degree that could satisfy a reasonable person" and has a "reasonable basis both in law and fact." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). As we have recognized in prior cases, the inquiry into reasonableness for EAJA purposes may not be collapsed into our antecedent evaluation of the merits, for EAJA sets forth a "distinct legal standard." *Federal Election Comm'n v. Rose,* 806 F.2d 1081, 1089 (D.C.Cir.1986). However, the agency bears the burden of establishing that its position meets the substantial justification threshold, *Lundin v. Mecham,* 980 F.2d 1450, 1459 (D.C.Cir.1992), and we find that the Board has failed to carry that burden here.

In the agency decision underlying *Cooper I,* the Board concluded that Cooper, by virtue of his union experience and education, should have known that he could not convert his disability annuity into an age and service

annuity and that he therefore was "not without fault" in causing the overpayments. *Cooper I*, 977 F.2d at 650. On review, although the court couched its holding in the language of the relevant legal standard—*i.e.*, "no substantial evidence"—we essentially determined that the Board *wholly lacked* a reasonable factual basis for its conclusion. We held that *"[n]othing* in the record" indicated that Cooper's union experience should have apprised him of the "intricacies" of a "highly complex [statute], capable of being misunderstood even by those considered experts in the field...." *Id.* (emphasis added). We also noted that, while the Board relied on the fact that Cooper had read a particular informational pamphlet, that pamphlet simply did "not address[ ]" the prohibition on converting disability annuities. *Id.* Indeed, mistakes of the kind Cooper made were "not unusual," particularly in light of the fact that "the [Railroad Retirement] Act says nothing explicit on the matter and neither do the Board's regulations." *Id.* at 651. In short, although we did not question the *Board's* interpretation of its own statute and regulations, the plain import of our decision is that there was no reasonable factual basis for finding that *Cooper* should have known that his annuity could not be converted. Accordingly, we hold that the Board's finding to the contrary was not substantially justified.

■ Since Cooper prevailed, and the government's position was not substantially justified, he is entitled to a "reasonable" attorney's fee. The court calculates the fee based on "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

■ Under EAJA, the maximum rate of $75 per hour may be adjusted by the change in the cost of living since 1981, when EAJA was enacted. *See* 28 U.S.C. § 2412(d)(2)(A). Cooper seeks fees at the rate of $113.85 per hour, which represents a 51.8% increase in the cost of living from 1981 to 1992. We agree with Cooper's calculation of the cost of living increase, and will award fees at the rate of $113.85 per hour.

We conclude, however, that Cooper's fee request must be reduced in several respects. First, Cooper seeks payment for 24 hours of work preparing his "Reply to Petitioner's Motion for Emergency Relief." In fact, leave to file this pleading out of time was denied and it was returned to Cooper. Accordingly, these hours will be deducted.

■ Second, Cooper seeks compensation for 13 hours he spent driving to and from oral argument. This circuit has not specifically addressed whether an attorney's fee award may include travel time, as contrasted with travel *expenses*. *Compare Environmental Defense Fund, Inc. v. Environmental Protection Agency*, 672 F.2d 42, 58 (D.C.Cir. 1982) (apparently including travel time in fee award, but not deciding issue of compensating travel time at a lower rate) *with Massachusetts Fair Share v. Law Enforcement Assistance Admin.*, 776 F.2d 1066, 1069 (D.C.Cir.1985) (expenses such as taxi fares, messenger services, travel expenses, telephone bills and postage not eligible for reimbursements as "costs" under EAJA). Other circuits allow payment for attorney travel time, although sometimes at a lower hourly rate. *See, e.g., International Woodworkers of Am. v. Donovan*, 792 F.2d 762, 767 (9th Cir.1985) (items routinely billed to a client, including attorney travel, are recoverable under EAJA); *Domegan v. Ponte*, 972 F.2d 401, 425 (1st Cir.1992) (noting court's "disinclination" to compensate an attorney at professional rates for travel time), *vacated on other grounds,* —— U.S. ——, 113 S.Ct. 1378, 122 L.Ed.2d 754 (1993). We conclude that travel time in this case will be compensated at half the base hourly rate, or $56.92.

■ Finally, it is clear that the time Cooper claims for performing certain tasks is unreasonable and should be reduced significantly. In particular, the time claimed for legal research and writing briefs, and for oral argument preparation, is excessive. Nearly all of the time claimed in June through September 1992—399.8 hours—relates to research and writing an opening and reply brief, and preparing for oral argument.

Although there is no doubt that the law concerning railroad retirement annuities is complex, and that Cooper's attorney had lit-

**1418**

tle prior experience in that field, the issues involved in this particular case were not difficult. The briefs Cooper submitted were not well-organized, and they devoted considerable space to arguments extraneous to the main issues—whether Cooper was "without fault" and whether recovery of the overpayment would cause "hardship." Therefore, we award fees for only one-half of the time devoted to brief-writing and argument preparation. This amounts to a deduction of 200 hours.

### 2. *Mandamus Petition*

■ While his case was being considered by the Board on remand, Cooper filed petition for review No. 93–1102, which the court construed as a petition for a writ of mandamus. The court denied Cooper's petition, although the order allowed Cooper to refile if the Board "unreasonably" delayed its remand proceedings.

It is clear that Cooper did not prevail in his mandamus petition, and therefore is not entitled to attorney's fees. Therefore, the fee award will be reduced by the 10.7 hours Cooper claims for this task.

### 3. *Remand Proceeding*

■ The 136.7 hours Cooper claims for February and March 1993 relate to proceedings on remand before the Board. Since the court in *Cooper I* remanded the case to the Board and did not retain jurisdiction, Cooper is not entitled to fees for the remand proceedings. *See Melkonyan v. Sullivan,* 501 U.S. 89, 97, 111 S.Ct. 2157, 2162, 115 L.Ed.2d 78 (1991) (attorney's fees under EAJA may be awarded for administrative litigation where the "court retains jurisdiction . . . and contemplates entering a final judgment following the completion of administrative proceedings"). Accordingly, we deduct 136.7 hours for Cooper's work on the remand proceedings.

In addition, Cooper devoted 21 hours to preparing the "Amended Application for Award of Attorneys Fees," and to responding to the Board's opposition. The amended application mainly addresses the mandamus petition and the proceedings on remand. The

court will therefore deduct 14 of the 21 hours Cooper devoted to the amended application.

### 4. Cooper II

■ The Board acknowledges that Cooper prevailed in *Cooper II,* in which the court held that the Board's hardship determination was not supported by substantial evidence. The Board argues, however, that its position was substantially justified.

For essentially the same reasons discussed in relation to *Cooper I,* we conclude that the Board's position was not substantially justified. As the court's opinion in *Cooper II* made clear, the Board's action in that case lacked the reasonable basis in fact required for a finding of substantial justification. *See Pierce,* 487 U.S. at 565, 108 S.Ct. at 2550. In determining that an income surplus of only $55 per month would not cause petitioner undue hardship, the Board "made no reference whatsoever to the hardship factors documented by petitioner." *Cooper II,* Mem.Op. at 2. We faulted the Board for focusing solely on one portion of the record—Cooper's past income statements—while completely ignoring the *uncontroverted* supplemental evidence of hardship and extraordinary expenses that Cooper submitted. *See id.* at 2–3. Indeed, the Board's decision took no account of critical facts concerning "petitioner's increasing debt, advancing age, deteriorating health and imminent major expenses." *Id.* at 3. EAJA directs us to consider the underlying agency action as well as its litigating posture, *see* 28 U.S.C. § 2412(d)(2)(D) (1988), and, in light of the above-mentioned omissions, we find that the Board's action lacked a reasonable factual basis and therefore was not substantially justified.

We agree, however, that Cooper's fee request for *Cooper II* should be reduced. As in *Cooper I,* Cooper seeks to be compensated for 13 hours of time travelling to oral argument. That time will be compensated at the rate of $56.92.

■ The amount of time spent on legal research and writing, and preparing for oral argument—158.2 hours—is excessive. As the Board points out, there was only one issue involved in *Cooper II,* namely, whether the Board's hardship determination was sup-

ported by substantial evidence. All of the documentation on this issue, such as Cooper's income and expense data, had been prepared at the administrative level. Much of the research Cooper did to prepare *Cooper I* would have been useful in preparing the briefs in *Cooper II*. Finally, as the Board notes, Cooper included arguments in his brief, and at oral argument, that did not relate to the only issue before the court. Accordingly, the time Cooper claims for research, writing, and oral argument preparation in *Cooper II* will be reduced by half.

### 5. *Bill of Costs and Third Amendment to Petition*

Finally, Cooper seeks reimbursement for $453.16 in duplicating costs related to *Cooper II*, and $200 in filing fees for *Cooper II* and No. 93–1102 (the mandamus petition).[1] We award the $100 filing fee for *Cooper II*, and $453.16 for duplicating costs, but exclude the filing fee for No. 93–1102, the unsuccessful mandamus petition.

The fee award is calculated as follows:

| | |
|---|---|
| Total hours claimed | 981.85 |
| *Cooper I* reduction: | −224 |
| [Out of Time Reply (24); Excessive research and argument preparation (200)] | |
| Mandamus petition | − 10.7 |
| Remand Proceedings | −136.7 |
| Unsuccessful fee request for No. 93–1102 and remand proceedings before Board | − 14 |
| *Cooper II* reduction: | − 79.1 |
| [Excessive research and argument preparation] | |
| | 517.35 (total hours) |

491.35 × $113.85 = $55,940.19 (fees at $113.85/hour)
[plus] 26 × 56.92 = $ 1,479.92 (fees at $56.92/hour)
[plus] $ 553.16 (costs)

= $57,973.27 (total award)

---

SILBERMAN, Circuit Judge, dissenting:

Petitioner sought review of a Board decision refusing to waive recovery of $40,661.24 in disability annuity overpayments. The Board may grant such waivers to the beneficiary of the overpayment "who, in the judgment of the Board, is without fault when, in the judgment of the Board, recovery would be … against equity or good conscience." 45 U.S.C. § 231i(c) (1988). In *Cooper v. Railroad Retirement Bd.*, 977 F.2d 647, 651 (D.C.Cir.1992), we held that petitioner was without fault and remanded for the Board to consider whether recovery would impose a "severe hardship" so as to be against equity or good conscience. On remand, the Board determined from financial data submitted by petitioner that repaying $150 per month would not cause him severe hardship and accordingly reduced the recovery amount from $593 to $150 per month. Although the payment would leave Cooper with $55 per month in spending money, we held on the second appeal by unpublished order that the Board failed to explain why that amount was a sufficient margin to cover unanticipated expenses. Since "[t]he law does not require that beneficiaries who are without fault be cut quite so close to the bone," *Peterson v. Railroad Retirement Bd.*, 780 F.2d 1361, 1365 (8th Cir.1985), we concluded that the Board's decision was "not supported by substantial evidence" and granted the petition for review. *See Cooper v. Railroad Retirement Bd.*, No. 93–1442, Mem.Op. at 3, 1993 WL 515541 (D.C.Cir. Dec. 6, 1993).

\* \* \*

Cooper seeks payment of attorney's fees incurred over the course of both appeals,

---

1. Costs for *Cooper I* have already been awarded
in the amount of $281.91.

arguing that, as the prevailing party, he is entitled to such fees under the Equal Access to Justice Act because the Board's position was not "substantially justified," 28 U.S.C. § 2412(d)(1)(A)—a formulation which we have interpreted to mean "roughly whether it was reasonable." *Union of Concerned Scientists v. Nuclear Regulatory Comm'n,* 840 F.2d 957, 963–64 (D.C.Cir.1988) (Williams, J., dissenting) (collecting cases). The panel agrees with Cooper, reviewing the evidence that led us to find that the Board's decision in each case was not supported by substantial evidence. While acknowledging that the EAJA imposes "a distinct legal standard" in awarding attorneys fees, *Federal Election Comm'n v. Rose,* 806 F.2d 1081, 1089 (D.C.Cir.1986), the panel's analysis simply equates the reasons for favoring Cooper on the merits—making him a prevailing party under the Act—with those supporting a finding that the government's position is not substantially justified. That approach would render the latter concept mere surplusage; had Congress so intended, it simply would have stated that fees are to be awarded to the prevailing party—without adding the proviso: "unless the court finds that the position of the United States was substantially justified," 28 U.S.C. § 2412(d)(1)(A).

Whether the government's position is substantially justified, of course, depends on what constitutes the government's position:

> "[P]osition of the United States" means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based....

28 U.S.C. § 2412(d)(2)(D) (1988). Thus, in addition to showing that its litigation posture is substantially justified, the government must also establish that the underlying agency action is reasonable. Congress so declared in an amendment to the Act, 99 Stat. 183 (1985), after *Spencer v. NLRB,* 712 F.2d 539, 557 (D.C.Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984), held that the government need only show that its litigation position, not the underlying agency action, was substantially justified. The amendment, however, in no way absolves the court reviewing an EAJA application of

its responsibility to consider whether the agency action is reasonable, independent of the court's decision on the merits. *See Rose,* 806 F.2d at 1087.

Our opinion in *Cooper I* was properly circumscribed, and refrained from denouncing the Board's action as unreasonable:

> We do not here question the Board's reading of its own regulations to cover Cooper's situation, although it is hard to discern a rationale for requiring someone like Cooper to return payments received during a time when all agree he was disabled. The important point is that we find no substantial evidence to indicate that Cooper's education and union experience should have led him to the Board's view.

977 F.2d at 651. An agency decision not supported by substantial evidence does not perforce give rise to liability for attorney's fees under EAJA, for an agency action could be substantially (reasonably) *justified* although not substantially *correct. See Pierce v. Underwood,* 487 U.S. 552, 566 n. 2, 108 S.Ct. 2541, 2550 n. 2, 101 L.Ed.2d 490 (1988). In *Pierce,* the Court specifically relied on the meaning of "substantial" in the APA to inform its definition of the same word in the EAJA and concluded that both approximated the meaning of "reasonable." *See id.* at 565–66, 108 S.Ct. at 2550–51. But that is only half of the formulation. The Court explained that "a position can be justified even though it is not correct, and we believe it can be substantially (*i.e.,* for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Id.* at 566 n. 2, 108 S.Ct. at 2550 n. 2. And we have specifically explained that an agency position may be substantially justified even if the action taken by the agency is deemed to be arbitrary and capricious. *See Rose,* 806 F.2d at 1089.

We granted the petition for review in *Cooper I* because the record did not support the Board's finding that a person with Cooper's union experience should have known of the requirements applicable to his pension plan. 977 F.2d at 650. But a reasonable person surely could think it justifiable that the Board expected a person whose pension benefits are his sole source of income to keep

apprised of the conditions of those benefits. The panel would sidestep this subtlety by focussing on the statement in *Cooper I* that "nothing" in the record indicated that Cooper should have known the "intricacies" of the laws and regulations governing his annuity. Of course, *Cooper I* itself belies the hyperbole, for it was uncontested that Cooper received and read periodical literature about retirement annuities and annual reporting notices mailed to him by the Board. In any event, our conclusion that the complexity of applicable regulations rendered Cooper "without fault" for his violations does not speak to whether the Board reasonably expected Cooper (and all other annuitants) to understand and follow the law. After all, Cooper conceded that his actions were unlawful, and the familiar maxim that ignorance of the law is not an excuse alone suffices to justify the Board's position.

The case for the government is even stronger in *Cooper II*, where we decided that the Board's gradual recovery of the money unlawfully paid to Cooper would be "against equity and good conscience." I went along with the disposition because I, like most judges, do not think it wise to dissent in every case that I think is wrongly decided, but only where the legal and practical consequences of the jurisprudential error justify comment. Now that Cooper has parlayed his recovery into an additional award of attorney's fees, I regret my initial acquiescence.

The panel concluded in *Cooper II* that the Board had failed to explain how a $55 per month allowance for unanticipated expenses was adequate. In deciding that paying back $150 per month of money Cooper had received erroneously would not cause him a severe hardship, the Board relied on statements submitted by Cooper himself as to expenses he had incurred in the past. Those submissions accounted for actual expenditures and included both ordinary and unanticipated expenses. The Board gave Cooper the benefit of the doubt on two contingent items, monthly rent of $450 from his children and credit card payments for past consumer debt; the former was not counted in Cooper's income, and the latter was included as an expenditure. Even with such generous accounting, the recovery ordered by the Board still left Cooper with at least $55 in unencumbered income per month. The decision in *Cooper II* argued that the allowance may not be adequate for *future* expenses, but gives scant reason as to the relevance of that analysis. The past data that Cooper submitted predicts his future expenses, and the reasons Cooper later offers to defeat the reliability of such submissions—his "increasing debt, advancing age, deteriorating health and imminent major expenses"—were all accounted for in the previous statements, which included credit card payments, deductions for a union health plan and another plan which Cooper intended to join, medicine costs, and car and house repairs. Of course, it is just as plausible that his future unanticipated expenditures (say, for consumer debt, which was included in his expenses) would fall, thereby leaving Cooper with even more discretionary income. And the Board's failure to make adequately explicit this intuitive assumption—even if unacceptable in the panel's judgment—does not mean that a reasonable person would think that the Board's position is not justifiable.