FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DOMINGO MUSQUIZ, | No. 23-8 |
| | Railroad |
| *Petitioner*, | Retirement Board |
| | |
| v. | OPINION |
| | |
| UNITED STATES RAILROAD RETIREMENT BOARD, | |
| | |
| *Respondent*. | |

On Petition for Review of an Order of the
Railroad Retirement Board

Argued and Submitted April 12, 2024
Pasadena, California

Filed July 3, 2024

Before: Eugene E. Siler, Ronald M. Gould, and Carlos T.
Bea, Circuit Judges.[*]

Opinion by Judge Gould

---

[*] The Honorable Eugene E. Siler, United States Circuit Judge for the
Court of Appeals, 6th Circuit, sitting by designation.

SUMMARY**

**Railroad Retirement Act**

The panel granted Domingo Musquiz's petition for review of a decision of the U.S. Railroad Retirement Board ("RRB") that adopted an RRB hearing officer's finding that Musquiz was not without fault in causing an overpayment of his reduced-age annuity under the Railroad Retirement Act ("RRA"), and denied his request for a waiver or reduction of repayment of the overpayment and penalty; vacated the RRB's decision; and remanded to the RRB for further proceedings.

For overpayments under the RRA, the RRB shall not recover from an individual who is without fault and when recovery would be contrary to the purpose of the RRA or would be against equity or good conscience. 20 C.F.R. § 255.10.

The panel agreed with the RRB that Musquiz was not without fault for the overpayment that occurred starting in August 2012 and up until June 2, 2013. However, it concluded that Musquiz was without fault for the RRB's overpayment of his annuity from June 3, 2013, onward, because by then the agency had told Musquiz that they had taken his outside earnings into account and adjusted his annuity payments.

Because the RRB concluded that Musquiz was not without fault for the entire overpayment, the RRB never

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

considered the second waiver element.  The panel held that there may be good reason to believe that recovery of the overpayment from June 3, 2013, onward would be contrary to the purpose of the RRA, against equity, or against good conscience.  On remand, the RRB should develop a factual record and make this determination in the first instance.

**COUNSEL**

Kathryn M. Davis (argued), Law Office of Kathryn M. Davis, Pasadena, California; Peter R. Afrasiabi. One LLP, Newport Beach, California; Alfred Hwang and Emily Lovell, Certified Law Students; University of California Irvine School of Law, Appellate Litigation Clinic, Irvine, California; for Petitioner.

Patrick S. Polk (argued), General Attorney; Kelli D. Johnson, Assistant General Counsel; Ana M. Kocur, General Counsel; United States Railroad Retirement Board, Office of the General Counsel, Chicago, Illinois; for Respondent.

# OPINION

GOULD, Circuit Judge:

Domingo Musquiz petitions for review of the final decision of the United States Railroad Retirement Board ("RRB").  The RRB affirmed and adopted an RRB hearings officer's decision that found that Musquiz was "not without fault" in causing an overpayment of his reduced-age annuity under the Railroad Retirement Act of 1974 ("RRA").  The RRB denied Musquiz's request for a waiver or reduction of repayment of the overpayment and penalty.

We grant Musquiz's petition, vacate the RRB's decision, and remand for further proceedings.

## I.  Factual and Procedural History

The RRA, codified at 45 U.S.C. § 231 *et seq.*, "replaces the Social Security Act for rail industry employers and employees and provides monthly annuities for employees based on age and service or on disability."  "The Railroad Retirement Act," *Attorney's Guide to the Partition of Railroad Retirement Annuities (07-20)*, U.S. Railroad Retirement Board (last updated Feb. 16, 2024).[1]  The RRB is "an independent agency in the executive branch of the Federal government" that administers the RRA.  *Id.*

Domingo Musquiz is now seventy-three years old. Musquiz worked in the rail industry for about twenty-seven years and eleven months.  Musquiz's last day of rail industry employment was February 1, 2006.  On April 4, 2010,

---

[1] Available at:
https://www.rrb.gov/Resources/LegalInformation/PartitionofRRA/The_RRA, https://perma.cc/6H3S-Q8KC.

Musquiz started work at Santa Barbara Cottage Hospital ("SBCH"), a non-rail industry employer.

In the spring of 2012, Musquiz learned that SBCH planned to let him go in June. On May 22, 2012, Musquiz applied by telephone to the RRB for a reduced-age annuity. In his telephone application, Musquiz stated that his last day of work for SBCH would be June 30, 2012, and that he expected his 2012 earnings to total less than $14,640.00. SBCH let Musquiz go on June 30, 2012. SBCH rehired Musquiz in July 2012. Musquiz did not tell the RRB that he had been rehired by SBCH or that his expected 2012 earnings had increased. The RRB started to disburse Musquiz's annuity on August 1, 2012. The RRB computed the annuity without any reduction for outside earnings.

On June 3, 2013, the RRB sent Musquiz a letter stating, "Your monthly annuity payments have been adjusted. Additional wages that you earned outside the railroad industry are now available to include in the tier 1 portion of your annuity." The letter also told Musquiz, "If you believe that this rate change is not correct, you may request that the rate be reconsidered."

On June 2, 2014, the RRB sent Musquiz another letter with the same language quoted above.

On June 1, 2015, the RRB sent Musquiz another letter with the same language quoted above.

On December 3, 2015, an RRB Claims Representative sent Musquiz a letter memorializing the telephone conversation that the Representative had with Musquiz on that same day. The letter explained that the RRB "completed [its] annual policy match to Social Security Administration (SSA) earnings record[s]. SSA records show that [Musquiz]

had the following earnings," and then listed Musquiz's 2012, 2013, and 2014 earnings at SBCH. The letter also asked Musquiz to provide additional information and W-2 forms for the "requested years." Musquiz provided the requested information and W-2s on or before December 21, 2015.

On February 27, 2016, the RRB Claims Representative sent a "reminder notice" that Musquiz provide his 2015 W-2. However, it is unclear if the RRB had previously requested the 2015 W-2 in addition to the W-2s that Musquiz had provided in December 2015. Musquiz provided the 2015 W-2 on or before March 4, 2016.

On April 25, 2016, the RRB sent Musquiz a letter telling him that he had received annuity overpayments from August 1, 2012, to December 31, 2015, and that the amount Musquiz owed the RRB, including a penalty deduction required by law, totaled $67,281.33.

On May 5, 2016, Musquiz requested a waiver and personal conference. On November 2, 2016, the RRB District Manager held a personal conference with Musquiz by telephone. That day, the District Manager sent Musquiz a letter asking him to complete a financial disclosure statement and return it with his most recent tax returns within thirty days. On or before November 24, 2016, Musquiz returned the financial disclosure statement and his tax returns. On December 12, 2016, the RRB denied Musquiz's request for a waiver of repayment, concluding that because Musquiz received a booklet of regulations that included reporting requirements when he applied for his annuity over the phone, he should have known about his reporting duties, so he was at fault when he did not report his change in employment and additional outside income.

Musquiz timely appealed, and on February 17, 2017, an RRB hearings officer held a hearing by telephone conference call. Musquiz participated without counsel. On March 22, 2017, the hearings officer concluded that recovery of the overpayment could not be waived in full or in part, and the penalty was proper, because Musquiz should have known about his reporting requirements and had deviated from the standard of reasonable care in reporting. The hearings officer did not make any findings as to how the RRB's 2013, 2014, or 2015 adjustment letters could have impacted Musquiz's understanding of his reporting requirements. On April 25, 2017, Musquiz appealed the hearings officer's decision.

Nearly five years later, on January 7, 2022, the RRB issued its final decision. The majority opinion, with one of three members dissenting, affirmed and adopted the decision of the hearings officer. The majority did not consider whether the RRB's 2013, 2014, or 2015 letters could have impacted Musquiz's understanding of his reporting requirements. One member dissented.

In his dissent, Labor Member John Bragg explained that "RRB regulations provide that all circumstance[s] surrounding an overpayment must be considered when evaluating whether an individual is without fault in causing an overpayment." In Labor Member Bragg's view, the RRB did not properly consider all circumstances, especially that the RRB had actual knowledge of Musquiz's outside employment earnings as early as June 2013, that the RRB had informed Musquiz that it had that actual knowledge, and that the RRB had implied that it had taken those earnings into account when recalculating Musquiz's annuities. Labor Member Bragg believed that Musquiz was without fault in causing the overpayment between June 2013 and December

2015, and he would have remanded to develop a current factual record in order to decide "whether recovery of the overpayment would be contrary to the RRA or against equity or good conscience."

On January 3, 2023, Musquiz timely filed a petition for review pursuant to 45 U.S.C. §§ 355(f), 231g, which gives us jurisdiction to review the RRB's final decision.

## II.  Analysis

### a.  Standard of Review

The RRB's findings of fact are conclusive "if supported by evidence and in the absence of fraud."   45 U.S.C. § 355(f).  We "will not set aside a decision of the [RRB] 'if it is supported by substantial evidence, is not arbitrary[,] and has a reasonable basis in law.'"  *Calderon v. U.S. R.R. Ret. Bd.*, 780 F.2d 812, 813 (9th Cir. 1986) (quoting *Akins v. U.S. R.R. Ret. Bd.*, 721 F.2d 652, 653 (9th Cir. 1983), and *Lowe v. U.S. R.R. Ret. Bd.*, 294 F.2d 115, 116 (9th Cir. 1961) (*per curiam*)); *Estes v. U.S. R.R. Ret. Bd.*, 776 F.2d 1436, 1437 (9th Cir. 1985).  "In this petition for review, the question for us is whether substantial evidence on the record considered as a whole supports the Board's decision . . . ."  *Cooper v. U.S. R.R. Ret. Bd.*, 977 F.2d 647, 650 (D.C. Cir. 1992).

### b.  Discussion

For overpayments under the RRA, the RRB shall not recover from an individual when two elements are both satisfied: "(a) The overpaid individual is without fault, and (b) [r]ecovery would be contrary to the purpose of the [RRA] or would be against equity or good conscience."  20 C.F.R. § 255.10.  This mandatory waiver is derived directly from the language of the RRA, which expressly provides: "There shall be no recovery in any case in which more than the

correct amount of annuities . . . has been paid . . . to an individual" who "is without fault when . . . recovery would be contrary to the purpose of" the law "or would be against equity or good conscience."  45 U.S.C. § 231i(c).

### i.   Element 1: Fault

We agree with the RRB that Musquiz was not without fault for the overpayment that occurred starting in August 2012 and up until June 2, 2013.  However, we conclude that Musquiz was without fault for the RRB's overpayment of his annuity from June 3, 2013, onward, because by then the agency had told Musquiz that they had taken his outside earnings into account and adjusted his annuity payments.

The RRB defines "fault" as "a defect of judgment or conduct arising from inattention or bad faith."  20 C.F.R. § 255.11(b).   Conduct may include "both action and inaction," "does not require a deliberate intent to deceive," and "is defective when it deviates from a standard of reasonable care . . . to comply" with the RRB's regulations. *Id.*  When determining "[w]hether an individual is at fault in causing an overpayment," the RRB must consider "all circumstances surrounding the overpayment."   *Id.* § 255.11(c).  The RRB has emphasized that it will consider such factors as: an individual's ability "to understand reporting requirements" or "to realize that he or she is being overpaid," which includes consideration of "age, education, comprehension, [and] physical and mental condition"; "the particular cause of non-entitlement to benefits"; and the number of times an individual "made erroneous statements." *Id.*

The RRB has enumerated several non-exhaustive circumstances in which it will find an individual at fault or not at fault.  *See id.* § 255.11(d)–(f).   For example, an

individual is at fault if the individual did not provide the RRB with "information which the individual knew or should have known to be material." *Id.* § 255.11(d)(1)(i). Notably, "an error on the part of the agency" cannot *per se* "extinguish fault on the part of the individual." *Id.* § 255.11(d)(4). However, an individual is not at fault if "[t]he overpayment is the result of [RRB] error of which the overpaid individual was not aware and could not reasonably have been expected to be aware." *Id.* § 255.11(e)(1).

Substantial record evidence confirms the RRB's conclusion that Musquiz was not without fault for the first period of overpayment, beginning August 2012 and ending June 2, 2013. Musquiz should have known that he was required to report his re-employment at SBCH. When Musquiz applied for his annuity, he signed directly underneath a paragraph where he agreed "to immediately notify the RRB" upon the occurrence of enumerated events that would increase his earnings. The list of events included the following: "if . . . I return to work for SANTA BARBARA COTTAGE HOSPITAL." Musquiz signed his name five lines below this explicit agreement. In determining whether Musquiz understood these reporting requirements, the RRB should have explicitly considered his "age, education, comprehension, [and] physical and mental condition." *See* 20 C.F.R. § 255.11(c). Regardless, there is substantial evidence in the record to support the RRB's implicit finding that Musquiz would have been able to read and understand the page that he signed and should have known to report his re-employment at SBCH to the RRB. We agree with the RRB that Musquiz was initially at fault for the overpayment and remained at fault up until June 2, 2013.

However, Musquiz was without fault for any overpayment that occurred on or after June 3, 2013.  On that date, the RRB wrote Musquiz a letter telling him that his annuity payments had been adjusted, noting explicitly that the RRB was aware of his additional non-railway industry wages, and showing him how the RRB calculated his new monthly rate.  The letter stated: "Your monthly annuity payments have been adjusted.  Additional wages that you earned outside the railroad industry are now available to include in the tier 1 portion of your annuity.  Here's how we figured out your new monthly rate."  The letter went on to show the RRB's calculations of the annuity.  The letter also stated, "If you believe that this rate change is not correct, you may request that the rate be reconsidered."  On June 2, 2014, and June 1, 2015, the RRB sent Musquiz similar letters with the same quoted language.

While an error on the part of the RRB is not enough to counteract an individual's role in causing an overpayment, here the RRB proactively communicated that the calculation of Musquiz's annuity was in order.  It is unreasonable for the RRB to conclude that Musquiz maintained a duty to report his additional outside earnings after receipt of the first letter, let alone the second and third letters, saying the RRB was aware of his additional earnings and that his annuity had been recalculated.  As Labor Member Bragg asked in his dissent, "after receiving the first letter, why would Mr. Musquiz think there was any need for him to report his wages?"  The record is clear that Musquiz diligently and promptly responded to every request the RRB made for additional information.  The record is also clear that, as early as June 3, 2013, the RRB had the earnings information it needed to recalculate properly Musquiz's annuity.  And the

record is clear that the RRB told Musquiz it had recalculated his annuity on his behalf.

What is unclear is why the RRB waited for more than two and a half years to act on that information. If we are to believe the RRB's own communications, the RRB has a policy to conduct annual matches "to Social Security Administration (SSA) earnings record[s]." In this case, the RRB's June 3, 2013 letter shows that it had conducted the match process and knew about the additional earnings but chose to wait an additional two and a half years, allowing additional overpayments to accrue, while simultaneously informing Musquiz that his annuity had been recalculated to account for those additional earnings. We cannot consider Musquiz to be at fault for any overpayments on or after June 3, 2013, because such overpayments were "the result of [RRB] error of which [Musquiz] was not aware and could not reasonably have been expected to be aware." 20 C.F.R. § 255.11(e)(1). It is reasonable for individuals and courts alike to presume the "regularity" of "the official acts of public officers." *United States v. Chemical Found.*, 272 U.S. 1, 14–15 (1926).

For the foregoing reasons, we conclude that Musquiz was not without fault for any overpayments between August 1, 2012, and June 2, 2013. However, Musquiz was without fault for any overpayments on or after June 3, 2013.

### ii.    Element 2: The Purpose of the RRA, Equity, or Good Conscience

Because the RRB concluded that Musquiz was not without fault for the entire overpayment, the RRB never considered the second waiver element: whether recovery would be contrary to the purpose of the RRA, against equity, or against good conscience. We next address that issue. In

our view, there may be good reason to believe that recovery of the overpayment from June 3, 2013, onward would be contrary to the purpose of the RRA, against equity, or against good conscience because the record demonstrates that: (1) Musquiz is now seventy-three years old; (2) Musquiz has multiple health conditions that require medication and treatment; (3) Musquiz was, and likely still is, on a fixed income; (4) Musquiz was, and likely still is, operating at a monthly financial deficit; (5) Musquiz was, and likely still is, struggling to afford his mortgage; and (6) Musquiz was unable to afford even a haircut.  As the RRB has stated, "[i]t is contrary to the purpose of the [RRA] for an overpayment to be recovered from income and resources which the individual requires to meet ordinary and necessary living expenses."  20 C.F.R. § 255.12(a).  However, the factual record of Musquiz's financial situation is not current, and the RRB never considered this second element.  Because such a determination "is highly fact specific and contextual," the "outcome" is not "foreordained," and we will provide the RRB "the flexibility" to develop a current factual record and make the determination in the first instance.  *Calcutt v. Fed. Deposit Ins. Corp.*, 598 U.S. 623, 630 (2023).

If the RRB concludes that recovery of the overpayment from June 3, 2013, onward would be contrary to the purpose of the RRA, against equity, or against good conscience, then the RRB must waive that portion of the repayment and penalty.

## III.  Conclusion

In enacting the RRA, Congress created a specialized benefits system for rail industry employees to ensure their wellbeing.  As the regulations demonstrate, the RRB may recover an overpayment of benefits when an individual's

inaction in reporting causes the overpayment, and even in some circumstances where the RRB also errs. *See* 20 C.F.R. § 255.11(d). However, when the RRB's continuous and repeated errors and communications make an individual's inaction in reporting reasonable, the RRB cannot hold that individual liable for the RRB's own errors. *See id.* § 255.11(e)(1). Musquiz admitted that, out of ignorance, he did not meet his reporting requirements. We agree that he should have to repay some of the overpayment. But once the RRB knew that it was miscalculating Musquiz's annuity, did nothing to correct its calculations, and expressly told Musquiz that his annuity had been recalculated with knowledge of his additional outside earnings, no fault may properly be attributed to Musquiz.

We **GRANT** Musquiz's petition for review, **VACATE** the RRB's decision, and **REMAND** to the RRB for proceedings consistent with this opinion.